United States Fidelity and Guaranty Co., Appellee, v.
Nationwide Mutual Insurance Co., Appellant.

(No. 24890—Decided December 18, 1959.)

*Mr. Paul P. Sogg,* for appellee.
*Messrs. Payne & Hermann,* for appellant.

Kovachy, J. This is an appeal on questions of law from a judgment entered in a declaratory judgment action in the Court of Common Pleas of Cuyahoga County in favor of plaintiff, United States Fidelity & Guaranty Company, and against defendant, Nationwide Mutual Insurance Company.

Plaintiff issued a comprehensive general automobile liability policy covering *any* accident for which The Atlas Steel Supply Company, a corporation (hereinafter called "Atlas"), would become legally obligated, and defendant issued a standard automobile combination policy to Ben Madvid, covering accidents arising out of the ownership, maintenance or use of an automobile, a stake truck, for "which the Insured shall become legally obligated." Each carried the usual provision obligating the insurer to defend any suit against the assured brought within the terms of the policy.

It appears further from the record that Ben Madvid filed a tort action in the Court of Common Pleas of Cuyahoga County on June 13, 1956, against Atlas, alleging that he drove his truck on Atlas' premises at its invitation and request for the purpose of selling it scrap and that, after alighting from the truck, he stood nearby while Atlas operated an overhead crane with an electric magnet attachment for the purpose of unloading his truck, and that, when Atlas carelessly and negligently swung a piece of scrap so as to strike him, he sustained personal injuries. He further averred that the control, management and operation of the crane and electric magnet were exclusively in the hands of Atlas and that he was injured and damaged in the sum of $20,000. This cause, No. 685,025, is pending.

Plaintiff in its second amended petition filed in the instant case contends "that it is the defendant's responsibility under the terms of its policy and the defendant contends that it is the plaintiff's responsibility under the terms of its policy to assume the investigation, defense, payment of attorney fees, and any judgment rendered in behalf of Ben Madvid arising out of the lawsuit filed by him" and prays for judgment "determining and

declaring the respective rights, obligations and liabilities of the plaintiff and defendant insurance companies under their respective insurance policies."

The trial court decreed that the defendant, Nationwide Mutual Insurance Company (formerly Farm Bureau Mutual Automobile Insurance and Farm Bureau Mutual Fire Insurance Company), was primarily liable under the terms of its contract to provide protection to Atlas, and that Atlas as an omnibus insured under such policy was entitled to the benefits of such policy in the suit of Ben Madvid against Atlas.

Defendant, appellant herein, in its assignments of error, claims that the trial court erred in making a declaration of rights, duties and obligations of the parties in the declaratory judgment action; and, secondly, that the trial court erred in declaring that the defendant had the obligation of extending insurance coverage to Atlas in the tort action.

We shall consider the latter assignment of error first.

The policy issued by the defendant was in the amount of $100,000 for each person, and pertinent parts thereof read:

"V. Purposes of Use Defined.

"(a) The term 'pleasure and business' is defined as personal, pleasure, family and business use. (b) The term 'commercial' is defined as use principally in the business occupation of the named insured, including occasional use for personal, pleasure, family and other business purposes. (c) *Use of the automobile for the purposes stated includes the loading and unloading thereof.*" (Emphasis ours.)

It is claimed in the tort action that Atlas was unloading scrap from Madvid's truck when the accident occurred.

Obviously, Atlas was unloading such scrap with Madvid's permission. Atlas, therefore, at the time of the accident, was not only carrying on an operation within the scope of the "business occupation" of the named insured but was using the automobile for the purposes stated in the policy. *Bobier* v. *National Casualty Co.*, 143 Ohio St., 215, 54 N. E. (2d), 798.

"III. Definition of 'Insured.'

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word '*insured*' includes the named insured and also includes any person

while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. * * *'' (Emphasis ours.)

Atlas, while unloading scrap from Madvid's truck, under the clear import of this language came within the definition of an ''insured'' of this policy.

Moreover, ''Coverage F'' reads:

''Bodily Injury Liability.

''To pay on behalf of the *insured* all sums which the *insured* shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by *any person*, caused by the accident and arising out of the ownership, maintenance or use of the automobile.'' (Emphasis ours.)

These provisions are free of any ambiguity. When construed together, they express an undertaking on the part of the defendant to indemnify any person or organization using the truck with the permission and in the business of the named insured against any personal injury claim he or it becomes legally obligated to pay. It would seem, then, that Atlas, coming within the purview of these provisions of the policy issued by the defendant, is covered by it as respects the accident set forth in the petition filed by Ben Madvid.

It is stated in the syllabus of *Bobier* v. *National Casualty Co., supra* (143 Ohio St., 215):

''1. A policy of indemnity insurance is to be construed in the light of the subject matter with which the parties are dealing and the purpose to be accomplished, and the language used must be given its ordinary and commonly accepted meaning.''

In the syllabus of *Lessak* v. *Metropolitan Casualty Ins. Co. of New York*, 168 Ohio St., 153, 151 N. E. (2d), 730, it is held:

''2. The sole test as to the duty of an insurance company, under a policy of liability insurance, to defend an action against the insured is the allegations of the petition in the action against the insured, and where such petition brings the action within the coverage of the policy, the insurer is required to make defense, regardless of the ultimate outcome of the action or the liability to the insured. (*Socony-Vacuum Oil Co.* v. *Continental Casualty Co.*, 144 Ohio St., 382, approved and followed.)''

It is worthy of note that the United States Fidelity & Guaranty policy under its definition of *insured* excluded insurance to any person or organization other than the named insured when the injured person was the named insured by the use of the following language:

"The insurance with respect to any person or organization other than the named insured does not apply under Division (2) of this insuring agreement: (a) to injury to or sickness, disease or death of any person who is a *named insured*; * * *" (Emphasis ours.)

The problem, as we see it, was simply one of construction of the policy, and broader language could hardly have been used in the policy. If the insurer desired to place any limitation upon its liability to cover this situation, it had the opportunity to do so, as exemplified by the policy issued by the plaintiff.

Defendant, in order to maintain its position, relies heavily upon the case of *Cain* v. *American Policyholders' Ins. Co.*, 120 Conn., 645, 183 A., 403. In that case, the policyholder was injured while a passenger in his own automobile which was being driven by a hitchhiker. The policyholder obtained a judgment against the hitchhiker and proceeded against his own liability carrier. The Supreme Court of Errors of the state of Connecticut held that he could not recover. That case is not analogous to the case at bar because it was decided under the law of Massachusetts, in which state there exists a compulsory liability insurance law to which the policy conformed. The syllabus, in paragraph three thereof, succinctly points up this when it states, in part:

"The provisions of the public liability policy, held by the plaintiff as owner of an automobile, conformed to the Massachusetts compulsory liability insurance law, the 'Insuring Clause' providing that the insurer 'agreed to indemnify' the insured (the plaintiff) 'and any person responsible for the operation of the named insured's motor vehicle . . . with his express or implied consent against loss by reason of the liability to pay damages *to others* for bodily injuries' sustained by any person other than employees of the insured or of such other person responsible as aforesaid, arising out of the ownership and operation of the motor vehicle. * * *" (Emphasis ours.)

The Supreme Judicial Court of Massachusetts construed the same provision of the Massachusetts compulsory motor vehicle liability insurance law (G. L. [Ter. Ed.] c. 90, Section 34A *et seq.*) in the same light in *MacBey* v. *Hartford Accident & Indemnity Co.*, 292 Mass., 105, 197 N. E., 516, 106 A. L. R., 1248.

The courts in other jurisdictions, however, where there are no compulsory liability insurance laws, have construed coverage provisions of automobile liability policies to extend to the claims of a named insured where language within the policy itself does not exclude such a one, in the following cases:

*Archer* v. *General Cas. Co. of Wis.*, 219 Wis., 100, 261 N. W., 9; *Howe* v. *Howe*, 87 N. H., 338, 179 A., 362; *Bachman* v. *Independence Ind. Co.*, 214 Cal., 529, 6 P. (2d), 943; *Union Auto. Ins. Co.* v. *Samelson*, 71 Colo., 479, 207 P., 1113; *Hardtner* v. *Aetna Casualty & Surety Co.* (La. App.), 189 So., 365; *Farmer* v. *United States Fidelity & Guaranty Co.*, 11 F. Supp., 542; *Aetna Casualty & Surety Co.* v. *General Casualty Co.*, 285 App. Div., 767, 140 N. Y. Supp. (2d), 670.

We hold accordingly that Atlas was an insured under the policy issued to Ben Madvid by the defendant and that said policy extended coverage to it in the tort action.

The policy issued by the plaintiff contains the following provision under the heading of "Conditions":

"13. Other Insurance.

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, *the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise.*" (Emphasis ours.)

The Supreme Court, in *Trinity Universal Ins. Co.* v. *General Accident, Fire & Life Assur. Corp., Ltd.*, 138 Ohio St., 488, 35 N. E. (2d), 836, states the law applicable where two insurance companies cover the same insured, one a general coverage and

the other a specific coverage. In that case, a defendant in a tort action was covered by two insurance policies. One policy, as the policy of the plaintiff in the instant case, was general, and the other, as the policy of the defendant here, was specific. The general policy, as here, limited its coverage to excess insurance where there existed coverage by a specific policy. It was held that under the general rule the specific insurer is primarily liable.

We believe that the principle of law therein pronounced is applicable to the instant case. Atlas, we have determined, was covered by both policies. The plaintiff's policy was general, the defendant's specific. Consequently, the primary liability lay with the defendant to assume the investigation, defense, payment of attorney fees and any judgment rendered in behalf of Ben Madvid arising out of the lawsuit filed by him. Accordingly, we conclude that the trial court was not in error in so ruling.

We, further, overrule the appellant's claim that the trial court erred in declaring the rights of the parties to the action because of the absence of necessary parties and because plaintiff failed to plead or adduce in evidence facts sufficient to constitute a cause of action for declaratory judgment.

Section 2721.12, Revised Code, in part, reads:

"When declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be *affected* by the declaration. * * *" (Emphasis ours.)

The controversy was entirely between the two insuring companies. Atlas, in any event, was covered in the tort action. The second amended petition averred nothing which could affect Atlas' basic right under one or the other policy or both to be defended and protected from liability in the tort action brought against it.

In the fourth paragraph of the syllabus of the case of *Schriber Sheet Metal & Roofers, Inc.,* v. *Shook,* 64 Ohio App., 276, 28 N. E. (2d), 699, it is stated:

"Section 12102-11, General Code [now Section 2721.12, Revised Code], which provides that in an action for declaratory judgment 'all persons shall be made parties who have or claim any interest which would be affected by the declaration,' allows joinder only of those persons legally affected and does not enlarge the procedure as to joinder of parties defendant."

See, *Firemen's Fund Indemnity Co.* v. *Shelby Mutual Cas. Co.*, 95 Ohio App., 88, 117 N. E. (2d), 477.

It is our opinion that a real controversy existed between the adverse parties in this case which was justiciable in character and which required speedy relief to the preservation of rights that may have been otherwise impaired or lost. Thus, a good cause of action for declaratory judgment was pleaded. *Schaefer* v. *First National Bank*, 134 Ohio St., 511, 18 N. E. (2d), 263; *Radaszewski* v. *Keating*, 141 Ohio St., 489, 49 N. E. (2d), 167; *American Life & Accident Ins. Co. of Ky.* v. *Jones*, 152 Ohio St., 287, 89 N. E. (2d), 301, 14 A. L. R. (2d), 815; *Driskill* v. *City of Cincinnati*, 66 Ohio App., 372, 34 N. E. (2d), 241.

The judgment is, accordingly, affirmed.

*Judgment affirmed.*

HURD, P. J., concurs.

SKEEL, J., dissenting. I cannot agree with the conclusions of the majority of the court in affirming the judgment of the trial court.

The action is one seeking a declaratory judgment of the rights and duties and their relation to the parties under two insurance policies, one issued by the plaintiff, United States Fidelity & Guaranty Company, to Atlas Steel & Supply Company, the other issued to Ben Madvid by the defendant, Nationwide Mutual Insurance Company. The second amended petition of the plaintiff, in part, alleges that on or about November 20, 1954, it executed and delivered to the Atlas Steel & Supply Company a comprehensive general automobile liability policy of insurance, and that the defendant, Nationwide, issued a policy of insurance to Ben Madvid covering a truck used by him in his business. On September 24, 1955, Madvid claims to have been injured by the alleged negligence of an employee of the Atlas Steel & Supply Company then engaged in unloading scrap steel from Madvid's truck at the direction of his employers on the property of Atlas Steel & Supply Company. The plaintiff claims that it is the defendant's responsibility under the terms of its policy to assume the investigation and defense of the At-

las Steel & Supply Company, the plaintiff's insured, arising out of the lawsuit filed ·by the defendant's insured, Ben Madvid, against the Atlas Steel & Supply Company.

The insurance contract between Ben Madvid and Nationwide Mutual Insurance Company provides in part:

"I Coverage F Bodily Injury Liability

"To pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person, caused by accident and arising out of the ownership, maintenance or use of the automobile.

"'* * *

"III Definition of 'Insured.'

"With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission. The insurance with respect to any person or organization other than the named insured does not apply:

"(a) * * *

"(b) to any employee with respect to injury to or sickness, disease or death of another employee of the same employer injured in the course of such employment in an accident arising out of the maintenance or use of the automobile in the business of such employer.

"IV * * *

"V * * *

"(a) * * *

"(b) * * *

"(c) Use of the automobile for the purposes stated includes the loading and unloading thereof."

The policy issued by United States Fidelity & Guaranty Company to the Atlas Steel & Supply Company was designated "Comprehensive General—Automobile Liability Policy." It provided, under the heading of "Insuring Agreements":

"I. Coverage A—Bodily Injury Liability.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages, including damages for care and loss of services, because of bodily injury, sickness or disease, including death at any time resulting therefrom, sustained by any person or persons and caused by accident.

"Coverage B—Property Damage Liability—Automobile.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident and arising out of the ownership, maintenance or use of any automobile.

"Coverage C—Property Damage Liability—Except Automobile.

"To pay on behalf of the insured all sums which the insured shall become obligated to pay by reason of the liability imposed upon him by law, or assumed by him under contract as defined herein, for damages because of injury to or destruction of property, including the loss of use thereof, caused by accident.

"II * * *

"III Definition of 'Insured.'

"The unqualified word 'insured' includes the named insured and also includes (1) under coverages A and C, any partner, executive officer, director or stockholder thereof while acting within the scope of his duties as such, except with respect to the ownership, maintenance or use of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining, and (2) under coverages A and B, any person while using an owned automobile or a hired automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is with the permission of the named insured, and any executive officer of the named insured with respect to the use of a non-owned automobile in the business of the named insured. The insurance with respect to any person or organization other than the named insured does not apply under division (2) of this insuring agreement:

"(a) to injury to or sickness, disease or death of any person who is a named insured;

"(b) * * *

"(c) * * *

"* * *"

And under the heading "Conditions" the policy reads as follows:

"1. * * *

"2. * * *

"3. Definitions

"(a) * * *

"(b) * * *

"(c) Purposes of Use. The term 'pleasure and business' is defined as personal, pleasure, family and business use. The term 'commercial' is defined as use principally in the business occupation of the named insured as stated in item 1, including occasional use for personal, pleasure, family and other business purposes. Use of an automobile includes the loading and unloading thereof.

"* * *

"13. Other Insurance.

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against loss; provided, however, the insurance under this policy with respect to loss arising out of the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance available to the insured, either as an insured under a policy applicable with respect to such automobile or otherwise."

From the foregoing provisions of the policies of both the United States Fidelity & Guaranty Company and of Nationwide Mutual Insurance Company, it is made perfectly clear that both policies are specific in regard to the protection necessary to cover the claim of Ben Madvid. The reason for this is that the United States Fidelity & Guaranty Company's policy has included within its terms a provision (Coverage A—Bodily Injury Liability) of insurance protecting the Atlas Steel & Supply

Company against liability because of injury to any person caused by accident. This paragraph of Atlas's insurance is not general but is specific coverage, giving its insured full and complete protection against the claim made by Madvid, whether resulting from unloading a nonowned motor vehicle by its employees or not. The claim, that the coverage of Nationwide is specific as to the facts pleaded by Madvid in his action against Atlas Steel & Supply Company and that they must, therefore, respond to and defend against the claim of Madvid (their insured) while the coverage of United States Fidelity & Guaranty is general and is available only when the coverage of Nationwide has been exhausted, is without any basis in fact or law, as shown by the undisputed provisions of the plaintiff's and defendant's policies of liability insurance and the pleaded facts of plaintiff's petition later herein set out.

The petition of the plaintiff seeks a declaratory judgment determining the obligations imposed by the policy of insurance covering Madvid and directing it to assume the investigation and defense against defendant's insured's (Madvid's) action seeking damages against plaintiff's insured because of the alleged negligence of the plaintiff's insured while unloading scrap steel on the property of plaintiff's insured. There is no request presented by the pleadings for a determination of the financial responsibility of either the plaintiff or defendant to pay or contribute to the amount of any judgment that may be entered against Atlas Steel & Supply Company should Madvid prevail in his action. The proper parties to entitle plaintiff to such a determination are not before the court.

The obligation imposed upon the United States Fidelity & Guaranty Company by its policy of liability insurance to defend its insured against all claims seeking damages as a proximate result of accident due to the claimed negligence of its insured, as defined in its policy, is absolute and is not subject to any of the conditions contained in such policy claimed by the plaintiff to shift its obligation to pay damages (coming within the terms of its policy of insurance) when determined by law against its insured to another. The plaintiff's insured is, by the contract of insurance here in evidence, entitled to the services of the plaintiff in the defense of all actions filed against it no matter

how groundless. Neither the Atlas Steel & Supply Company nor Ben Madvid are parties to this action so that their rights under their respectaive insurance policies cannot be the subject of a judgment in this case, and no judgment should be entered depriving either of them of their rights for protection and services of their respective insurers.

It is true that the negligence of an employee of Atlas Steel & Supply Company was alleged to have been committed while removing scrap steel from Ben Madvid's truck. It is further true that had the injury been to one other than Ben Madvid, he would have been protected if liability could be established against him. However, Atlas Steel & Supply Company cannot compel the defendant, under the policy provisions of the defendant's policy, to defend them against the defendant-insured's claim for damages.

In the case of *Cain* v. *American Policyholders' Ins. Co.,* 120 Conn., 645, 183 A., 403, it is said:

"The effect which the plaintiff seeks to give to this policy is foreign to the object and common conception of the scope of public liability insurance which, as concerns the assured, is third party coverage, that is, insurance against the liability of the assured for injury which has been sustained by a third person by negligence in the operation of the automobile. * * * To accord to this policy the effect which the plaintiff claims would be to virtually insert into it another contract, distinct from public liability coverage within the scope of the policy and amounting to personal accident insurance against bodily injuries suffered by the assured. There is nothing to indicate any intention of either party to combine, in this policy, these two kinds of coverage. A public liability policy is not a policy of accident insurance indemnifying the assured against injuries suffered by himself in an accident. By its definite terms it insures against claims for damages for which he or others named in the policy might become liable."

It would indeed be unusual to enforce divided loyalties in the same contract. The contract was primarily to protect Ben Madvid and his partners against any legal obligation resulting from his negligence or from those whose negligence could be imputed to him and to protect him in all events by reason of the

negligent use of his truck. To paraphrase a sentence used by the Supreme Court in the case of *State* v. *Wells*, 134 Ohio St., 404, at page 410, 17 N. E. (2d), 658, a contract should never be interpreted as showing a purpose to be "a cloak for strategy or other device employed to defeat the plainest principles of justice." Ben Madvid never intended to buy protection for his adversary in an action in which he himself is plaintiff, and the word, "insured," as defined should not be expanded to include such duty under the insurance contract here in evidence.

In dealing with an action wherein the named insured was seeking to recover from his insurer under a liability policy, where he was injured by the negligent use of his automobile by one who was operating it with the insured's permission, the Court of Appeals of Georgia, in the case of *Bailey* v. *Metropolitan Casualty Ins. Co.*, 89 Ga. App., 53, 54, 78 S. E. (2d), 626, 627, said:

"The fact that the policy describes an 'insured' so as to include, in addition to the named insured, any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or with his permission, does not render the above insuring clause ambiguous, or in any way modify it except by enlarging the term 'insured.' Construed together, the provisions mean that the insurance company agrees to pay on behalf of the insured, whether it be the named insured or some other person operating the named insured's automobile with his permission, all sums which such insured shall become legally obligated to pay as damages to some other party. Under no possible construction could any insured, whether the named insured or another person, become legally obligated to pay himself damages for injuries to himself, resulting from his own operation of the named insured's automobile."

The case of *Trinity Universal Ins. Co.* v. *General Accident, Fire & Life Assurance Corp., Ltd.*, 138 Ohio St., 488, 35 N. E. (2d), 836, is cited as authority for the rule that where two policies of insurance are purchased by an assured in which the protection afforded by the terms of one policy is general and the other specific, as to a particular loss sustained by such assured,

the policy giving specific coverage as to the loss sustained would be required to respond in covering the loss within its full monetary limits before the other policy could be required to respond. That case is not in point in the present controversy because in that case the named insured in each policy was the same person, while in this case the named insured and the purchaser of each policy are different persons, and, in fact, each is an adversary against the other in the litigation about which plaintiff here seeks a declaratory judgment.

The rights of the parties under their respective policies must also be determined from the allegations of the pleadings in this case and such evidence as is presented to support the controverted questions of fact. In the plaintiff's second amended petition seeking a declaratory judgment, it is alleged:

"Plaintiff further states that on or about the 24th day of September, 1955, Ben Madvid was injured while unloading his truck on the premises of the Atlas Steel & Supply Company. Plaintiff further states that while unloading said truck, Ben Madvid was injured and that the full extent of the personal injuries received by him are described in a lawsuit instituted by him in the Court of Common Pleas of Cuyahoga County, Ohio, case No. 685,025. Plaintiff further refers to said petition and makes it a part hereof as though fully rewritten at length."

In the petition filed by Ben Madvid in case No. 685,025, in which he is the plaintiff and the Atlas Steel & Supply Company is the defendant, the plaintiff alleges:

"Plaintiff further says that on or about September 24, 1955, at approximately 11:30 a. m. the plaintiff was at the defendant's premises at Trumbull Avenue at the invitation and request of the defendant for the purpose of selling to the defendant certain scrap; that after the plaintiff drove his truck on said premises, he alighted from said truck and was standing in the vicinity thereof when the defendant operated an overhead crane with an electric magnet attachment for the purpose of unloading plaintiff's truck; suddenly, unexpectedly and without warning, the defendant picked up a piece of scrap from said truck with said magnet and carelessly and negligently swung said piece of scrap so as to strike the plaintiff, and the plaintiff thereby sustained

personal injury which will be more specifically hereinafter set forth.''

After setting out plaintiff's claims of negligence, the petition then alleges:

''Plaintiff further says that the control, management and operation of said crane and electric magnet was exclusively in the hands of the defendant; that said injury to the plaintiff was an unusual and extraordinary occurrence which would not have occurred except for the negligence and carelessness of the defendant.''

There is no attempt in the petition or the evidence to establish at what point Madvid completed his obligation under the sales agreement. If Madvid had completed his obligation by delivering the scrap iron on the premises of Atlas and it was the duty of the Atlas Steel & Supply Company to do the unloading which, under the facts, without allegations and proof to the contrary, would be the only reasonable conclusion, taking into account the material to be unloaded and the conduct of the parties, then the use of the truck would in no way be involved and the unloading operation and the unloading would be entirely the responsibility of Atlas. This is the state of the record, so that the only policy involved insuring the defense of Atlas against the claim of Madvid would be that of the plaintiff.

For the reasons, therefore:

(1) That the provisions of the plaintiff's policy do not relieve the plaintiff in any event from its promise to defend its insured in an action within the coverage of the policy no matter how groundless;

(2) That a contract of insurance should not be interpreted to completely change the character of its coverage and to attempt to enforce divided loyalties between the contracting parties; and,

(3) That without alleging facts sustained by at least some evidence showing that the alleged acts of negligence of Atlas resulted from a duty which Madvid owed in delivering the scrap, or in the use of his truck, and that such duty was specified in the terms of his contract of sale so that the act of delivery would come within the terms of the defendant's policy, the plaintiff

could not and did not make out a case for a declaratory judgment.

The terms of plaintiff's policy cannot enlarge or extend the coverage of defendant's policy.

Therefore, the judgment should be reversed and final judgment entered for the defendant.