[Civ. No. 26027. Second Dist., Div. Four. Nov. 30, 1962.]

INDUSTRIAL INDEMNITY COMPANY, Plaintiff and Appellant, v. GENERAL INSURANCE COMPANY OF AMERICA, Defendant and Respondent.

Betts, Ely & Loomis and John A. Loomis for Plaintiff and Appellant.

Bolton, Groff & Dunne and Gene E. Groff for Defendant and Respondent.

BURKE, P. J.—In this suit for declaratory relief determination is sought, as respects two insurance companies, of the order of incidence, if any, of their respective contractual obligations to defend and indemnify Joseph F. Howe (crane operator) and the Young and Anderson Company (crane owners), defendants in a certain personal injury action commenced in Santa Barbara County by James R. Lee (truck driver) to recover damages for injuries received by reason of the negligence of the crane operator. The crane owners are made

parties thereto on the ground of *respondeat superior*. At the time the briefs were filed herein the truck driver's action was pending in Santa Barbara.

The stipulated facts, in substance, recite that the injured truck driver was employed by Hurst Concrete Products Company (Hurst). On July 8, 1958, Hurst delivered a load of concrete pipe to the crane owners near the latter's job site at a point away from premises owned, rented or controlled by the crane owners or the ways immediately adjacent to such premises. The truck driver had transported the pipe on a flat bed truck owned by Hurst and in the course of delivery requested and received the assistance of the crane which was operated by the crane owners' employee. To effect the unloading the truck driver affixed a pipe hook to a section of pipe and then signalled the crane operator to lift the pipe whereby the pipe sections were removed from the Hurst truck.

While a section of pipe was being removed the truck driver, standing on the bed of the truck, was struck by a section of pipe depending from the crane and thereby sustained his injuries. Thereafter, the truck driver brought suit in Santa Barbara County against the crane operator and the crane owners to recover damages arising from such injuries.

The present suit was commenced by Industrial Indemnity Company (Industrial), which had issued a policy of insurance to the crane owners to have declared the liabilities and order of incidence of their policy as against an outstanding policy issued by General Insurance Company (General), the insurer of the Hurst truck. General was named defendant in this suit.

The trial court concluded (1) that the crane operator and its owners are covered by the Industrial policy and Industrial is obligated to furnish them a defense against the truck driver's suit, and (2) that the crane operator and its owners were not insureds within the meaning of the General policy.

Industrial, appellant herein, contends that its policy provides no coverage to the crane operator or to its owners both by reason of the fact the crane was not an automobile under the definition of its policy so that the crane operator, as the negligent employee, was not covered, and that since the unloading operation includes "use" of the Hurst truck, the General policy applies both to the primary liability of the crane operator and to the crane owners' liability under the doctrine of *respondeat superior*. The trial court found, among other things, that the crane was an automobile within the

meaning of the Industrial policy and, since the Hurst truck did not form a basis of liability in the truck driver's suit, the General policy is inapplicable.

For reasons hereinafter developed we have reached the following conclusions:

1. The General policy issued to Hurst, covering the flat bed truck which was being unloaded at the time of the accident, includes the crane operator as an additional insured, because. at the time of the accident he was using (unloading) an automobile (the flat bed truck) owned by the named insured (Hurst).

2. The crane operator is not an additional insured under the Industrial policy, which under its general liability provisions covered only the crane owners for any claim arising out of the operation of the truck crane and did not cover, under the definition of additional insured contained in the policy, any person operating a power crane unless he was an officer or director or partner.

3. The General policy, which is the only policy which covers the employee crane operator, is primary insurance and General is obligated to furnish a defense to him and to pay any judgment rendered against him to the extent of its policy limit.

4. The crane owners are also additional insureds under the General policy because they are a "person or organization legally responsible for the use" (unloading) of the flat bed truck owned by Hurst.

5. Result: General must defend and pay any judgment in the action brought by the injured truck driver.

The General policy covers liability for sums the insured is legally obligated to pay "for damages because of injury . . . arising out of . . . use of automobiles, including the loading and unloading thereof." The term "insured" includes "any person while using an automobile owned . . . by the named insured . . . provided the actual use is with the permission of the named insured."

Where a person is loading or unloading a truck it has been uniformly held that such person is "using" that truck within the meaning of insurance policies similar to those present here and is therefore an additional insured under the policy. (See *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.*, 190 Cal.App.2d 194, 203 [11 Cal.Rptr. 762]; *Pleasant Valley Assn.* v. *Cal-Farm Ins. Co.*, 142 Cal.App.2d 126, 134 [298 P2d 109].)

There is no contention that the crane operator was not unloading the Hurst truck with the permission of the named insured. General argues, however, that if the truck is not "a legal basis of liability with respect to [the truck driver's] injury, the General policy is inapplicable." It further states that "Where the injured party's asserted basis of liability does not come within the terms and conditions of the liability covered under an automobile policy, such automobile policy does not attach irrespective of whether said policy extends coverage to loading and unloading."

Here, while the truck does not form a legal basis of liability to the truck driver, under the terms and conditions, General is obligated to defend and indemnify the crane operator and its owners as additional insureds because their liability to the truck driver was incurred in "using" that truck. For example, in the first California case to consider this point (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.*, 106 Cal.App.2d 630 [235 P.2d 645]), a truck covered by defendant's policy of liability insurance delivered a load of oil to a receiving depot. Activities at the receiving depot were provided with liability coverage by plaintiff's policy. Certain valves in a stationary pumping apparatus of the receiving depot were negligently left open by the pump operator employed by the depot and the oil delivered by the truck was pumped into an adjacent bay instead of the intended storage tanks. Although the cause of the accident was negligence of persons operating facilities apart from the truck, and such negligent persons performed no operation directly upon the truck, the court held that the negligent conduct occurring during the unloading operation was a use of the truck within the meaning of defendant's policy. The court said at page 635: "It has uniformly been held that the 'loading and unloading' provision in insurance contracts, such as involved here, is one of extension. It expands, rather than limits, the term 'the use of' the motor vehicle somewhat beyond its usual connotation so as to bring within the policy some acts in which the motor vehicle itself does not play any part." The court further stated, at page 637: "Such a policy does not require that the injury be a direct and proximate result, in any strict legal sense of that term, of the use of the motor vehicle covered by the policy. [Citations.]" Failure to observe this rule of construction of insurance policies was error in the court below, since it is clearly applicable in the present case.

Here the crane operator was using the Hurst truck in the sense of unloading it. The mere fact the crane, as an independent instrumentality, was also used to accomplish this objective does not change the result. For example, in the *American Auto. Ins. Co.* case, *supra,* the direct cause of injury was the use of apparatus independent of the truck. More recent California cases have reached the same result. Thus, in *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch., supra,* 190 Cal.App.2d 194, the driver of a truck insured by defendant was taking on a load of soda ash at plaintiff's chemical plant. The truck, equipped with covered compartments, was loaded by means of a flexible spout introduced into the truck through hatches to the compartments. The spout was lifted and maneuvered by a rope attached thereto. This rope, for which plaintiff was responsible in all respects, was frayed and worn. While the truck driver was manipulating the spout, the rope broke because of plaintiff's negligent maintenance thereof and he fell off his truck and was injured. Plaintiff settled with the driver for $21,000 and then brought suit against the insurer who insured the blameless truck and its owner. It was held that plaintiff was "using" the truck while loading the soda ash and therefore entitled to recover from the insurance carrier of the injured driver's employer. In discussing this point the court followed the rule of construction announced in *American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630, 635. Numerous other cases have reached the same result and further discussion should not be required. (See *Employers etc. Ins. Co.* v. *Pacific Indem. Co.,* 167 Cal.App.2d 369 [334 P.2d 658] [involving crane loading truck]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co., supra,* 142 Cal.App.2d 126; see also *Bituminous Cas. Corp.* v. *Travelers Ins. Co.* (D.C. Minn.) 122 F.Supp. 197; *United States Fid. & Guar. Co.* v. *Nationwide Mutual Ins. Co.,* 110 Ohio App. 363 [163 N.E.2d 46] [crane operator]; *Ermis* v. *Federal Windows Mfg. Co.,* 7 Wis.2d 549 [97 N.W.2d 485]; *D'Aquilla Bros. Contracting Co.* v. *Hartford Accident & Indem. Co.,* 22 Misc.2d 733 [193 N.Y.S.2d 502] [crane operator].

Therefore, we must conclude that the negligence of the crane operator in unloading the Hurst truck was covered by the General policy.

General argues, however, that the Industrial policy also covers the activities of the crane and must be regarded as primary. To sustain this conclusion General points to an

"other insurance" clause in its policy which provides: "If at the time of an occurrence there is any other insurance available to the insured (in this or any other carrier) there shall be no insurance afforded hereunder as respects such occurrence except that if the applicable limit of liability of this policy is in excess of the applicable limit provided by the other insurance available to the insured this policy shall afford excess over and above such other insurance in an amount sufficient to afford the insured a combined limit of liability equal to the applicable limit of liability afforded by this policy. It is further provided that with respect to loss arising out of the operation, maintenance or use of any non-owned automobile the applicable insurance afforded by this policy shall be excess over and above such other available insurance. Insurance under this policy shall not be construed to be concurrent or contributing with any other insurance which is available to the insured."

Since we must give effect to this clause, if applicable, we must determine whether or not the Industrial policy provides coverage to the instant occurrence.

Industrial concedes that the general liability provisions of its policy cover the crane owners as named insured for liability arising from activities of the crane. It argues, however, that the negligent crane operator employee is not covered by its policy as an additional insured. It therefore concludes that General, under whose policy the crane operator is covered, is primary, since the insurance alone covering the negligent employee is deemed primary over a policy covering a person vicariously liable. (See *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 428-429 [296 P.2d 801, 57 A.L.R.2d 914]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.*, *supra*, 142 Cal.App.2d 126, 136.) Under the cases just cited, Industrial's conclusion must be sustained if the crane operator is not an additional insured within the meaning of the Industrial policy.

The Industrial policy provides, in the only definition of "insured" that could include the crane operator, that "The unqualified word 'insured' includes: . . . any person or organization legally responsible for the use of an owned or hired automobile, provided the actual use is by the named insured or with his permission, . . ."

The heart of Industrial's contention that its policy does not apply is that the crane, while being operated by the crane

operator at times pertinent hereto was not an automobile within the meaning of its policy. The policy provides:

"3. Definitions:

" . . . . . . . . . . . . . . . . .

"(b) . . . Except where stated to the contrary, the word 'automobile' means a land motor vehicle or trailer as follows:

" . . . . . . . . . . . . . . . . .

"(3) . . . The following described equipment shall be deemed an automobile while towed by or carried on an automobile as above defined solely for purposes of transportation or while being operated solely for locomotion, but not otherwise: if of the non-crawler type, any power crane . . . ."

General does not argue that the language of the above exception does not describe the power crane involved here. They do assert, however, several theories to sustain a conclusion that the Industrial policy covers the crane and its operator: (1) the crane exclusion applies only to nonowned automobiles; (2) the exclusion conflicts with the definition of "automobile liability," thereby creating an ambiguity to be resolved against the insurer; and (3) California case law requires a finding in favor of coverage notwithstanding the language of the policy.

(1) The theory that the exclusion applies only to nonowned automobiles is based on the format of the policy. General points out that this format, under "Definition," defines "(b) Automobile," then as subheads (1), (2) and (3), owned, hired and nonowned automobiles, respectively. They argue that since the above recited exclusion is positioned under "(3) Non-owned automobiles" in such a manner as to appear to qualify that term, that either (a) the exclusion applies to nonowned automobiles only, or (b) there is ambiguity which should be construed against the insurer.

The position of the exclusion clause suggests that it is part of subheading (3) relating to nonowned automobiles. However, the language of the clause, as can be seen, is not restricted to such narrow limits; rather, a reading of the policy compels the conclusion that the clause is intended to qualify the term "automobile" generally without respect to questions of title. However, there is ambiguity when the language of the clause is compared with its position in the format of the contract. But to construe that ambiguity against the insurer here would exalt form over substance, and be contrary to the interdiction of law in this state, for "The law respects form less than substance." (Civ. Code, § 3528.) ■ The position

of a provision in an insurance policy cannot constitute a better indication of the intention of the parties than the plain sense meaning of the words. We conclude that the exception in question qualifies automobiles generally and is not restricted to nonowned automobiles only.

(2) The Industrial policy describes "automobile liability" as follows: " 'Automobile liability' means legal liability for damages arising out of the ownership, maintenance, use, loading or unloading of automobiles while away from premises owned, rented or controlled by the named insured or the ways immediately adjoining.''

General says this clause creates a "basic conflict of ambiguity" because automobile liability includes the loading of automobiles, but that certain loading devices are excluded from coverage. Industrial has conceded coverage of the crane as to the named insured under the general liability provisions of the policy. The problem here is only whether the crane operator, individually, is an additional insured. There is no conflict merely because the insurer has restricted coverage of the policy in certain respects not involving the named insured. "An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. [Citations.]" (*Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal. 2d 423, 432.) The crane operator is covered only when operating "owned or hired automobiles" under the plain language of the policy. Since the crane while operated by the operator at times pertinent here was not an "automobile," he is necessarily excluded from coverage for automobile liability. There is no other basis under which he could be declared an additional insured and it is not suggested that the Hurst truck is an "owned or hired automobile.''

(3) The argument based on California case law depends on *Employers etc. Ins. Co.* v. *Pacific Indem Co., supra,* 167 Cal. App.2d 369, where it is held that although the crane is not insured as an automobile, accidents occurring because of use of the crane are covered under a general provision of coverage in the policy. This conclusion is applicable here. As noted above, Industrial concedes the point. However, the fallacy of General's argument is failure to recognize that the crane operator is not an additional insured with respect to the accident since he was not operating an automobile within the definition of that term in the policy.

Therefore, since Industrial's policy does not cover the crane operator, and General's does, the General policy is primary with respect to coverage and it then follows that General is also obligated to furnish a defense to the action against the crane operator and its owners. (See *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 429; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co., supra,* 142 Cal.App.2d 126, 136.)

The matter was tried upon stipulated facts and documentary evidence below. ▇▇▇▇ Because there will be no factual issues to be determined after a reversal of the judgment, since the errors of the trial court were of law only, it is appropriate to reverse with directions. (Code Civ. Proc., § 53; *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 440.)

The judgment is reversed with directions to enter judgment for plaintiff in accord with this opinion.

Jefferson, J., and Ford, J.,* concurred.

---

*Assigned by Chairman of Judicial Council.