[Civ. No. 11559. Third Dist. June 13, 1968.]

HOME INDEMNITY COMPANY et al., Plaintiffs and Appellants, v. TRANSPORT INDEMNITY COMPANY et al., Defendants and Appellants.

---

Fitzwilliam, Memering, Stumbos & DeMers and Ernest M. Thayer for Plaintiffs and Appellants.

Rust & Hoffman, David C. Rust, Richard F. Mills, Rodegerdts, Means & Northup and Frederick R. Estey for Defendants and Appellants.

BRAY, J.*—All parties[1] appeal from a judgment in favor of plaintiffs Home Indemnity Company and Wilkins Draying Company against Transport Indemnity Company, Lathrop Construction Company and The Travelers Insurance Company in a declaratory relief action determining respective rights and liabilities under certain insurance policies.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

[1]Plaintiffs originally appealed but at oral argument informed the court that they abandoned their appeal.

*Questions Presented*:

A. *Transport Indemnity Appeal*: Was the Pacific Cement and Aggregates, Inc., truck in the process of being unloaded?

B. *The Travelers Insurance Company Appeal*: Was the use of Wilkins' crane covered by the Travelers policy issued to Lathrop?

RECORD:

This declaratory relief action arises from the following situation: Lathrop Construction Company (hereafter Lathrop), insured by The Travelers Insurance Company (hereafter Travelers), was a general contractor engaged in constructing certain buildings at the Davis campus of the University of California. Lathrop purchased concrete from Pacific Cement Aggregates, Inc. (hereafter Pacific) which was insured by Transport Indemnity Company (hereafter Transport). Lathrop was engaged in pouring the concrete walls of the second story of a classroom building. Because of the height at which the concrete was poured, it was necessary to use buckets hoisted by a self-propelled crane which Lathrop had rented from Wilkins Draying Company (hereafter Wilkins) insured by Home Indemnity (hereafter Home). The pouring process was accomplished by having Pacific pour the concrete from its truck down a chute into a bucket which was then attached to the crane and hoisted to the place of pouring. The trucks were self-unloading, the only apparatus used in the unloading was the truck's own equipment.

Pouring of the wall on one side of the building had been completed, and it became necessary to move the crane from one side of the building to the other in order to pour the opposite wall. Maurice Little, a Lathrop employee, was the bucket man. It was his job to attach the buckets to the crane for hoisting and signal the crane operator to hoist the bucket after it was filled. After the crane had been moved to the new position, the boom was extended over the building for the purpose of bringing the empty buckets to the same side of the building as that on which the concrete was to be poured.

Although there is some dispute concerning the position of Pacific's truck at the time of the accident, it is uncontroverted that Little was not close to the truck when injured, that no buckets had been placed beneath the truck, and that the truck in no way contributed to the injury. Little was directing the crane as it moved around the building so that the boom would not hit the trees. After the crane was backed into position, Little waited for the crane's hook so that he

could attach it to the empty buckets. As the crane operator was lowering the cable weight, "headache ball," and hook, they fell and crushed Little's hand.

Little filed a personal injury action against Wilkins and Home undertook its defense. Ultimately a settlement was reached, Home paying Little $31,500.

Thereafter Wilkins and Home brought this declaratory relief action against Transport, alleging that Transport's policy with Pacific obligated Transport to reimburse Home for a portion of the settlement paid Little, and asking for a declaration that Transport's policy limits should not be treated as excess insurance but prorated along with the limits of Travelers' policy so Transport would bear almost the entire burden of the settlement.

The trial court held that Wilkins' crane was using Pacific's truck at the time of the accident and that Transport therefore was obligated to contribute to the settlement. The court then prorated the burden of the settlement on the basis of the relation of the limits of coverage of each insurance policy to the total coverage of all the policies, with the result that Transport is required to pay five-sixths of the settlement and Home one-sixth.

A. *Transport Appeal*

 Was the crane in the process of loading and unloading Pacific's truck?

Transport, Pacific's insurer, contends that as a matter of law Pacific was not covered by its policy because its truck was not in the process of loading or unloading.[2] The trial court found that Wilkins' crane was in the process of unloading Pacific's truck and hence Pacific's carrier, Transport, was liable to indemnify Wilkins' carrier, Home. At the time of the accident Pacific's truck was not being actually loaded or unloaded. Its exact position is in question, but it in nowise contributed to the accident.

Plaintiffs rely upon *Maryland Cas. Co.* v. *Tighe* (9th Cir. 1940) 115 F.2d 297. There a truck driver who had delivered vegetables to an inn was returning to his truck parked at the curb for more vegetables to deliver to the inn, ran from the inn toward the truck while looking backward over his shoulder, and in so doing collided with and injured a pedestrian. The court held that the driver was covered by an insurance

---

[2] The policy provision is: "Bodily injury . . . caused by the existence, ownership, maintenance or *use* . . . [of an owned or non-owned automobile]." [Italics added.] "Automobile" includes "truck," and "use" has been interpreted to mean loading or unloading.

policy which provided, "Use of the automobile . . . includes the loading and unloading" of the truck, as the driver was engaged in unloading the truck. The facts of Tighe seem a long way from those in the case at bench.

Transport relies upon *Entz* v. *Fidelity & Cas. Co.* (1966) 64 Cal.2d 379 [50 Cal.Rptr. 190, 412 P.2d 382], and *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229 [40 Cal.Rptr. 165]. In *Entz* Capitol Iron Works was erecting an iron fence. It had contracted with one Martin to pour cement for five post holes. Martin's employee, Pruitt, was shoveling cement into the post holes. Martin had arranged with A. Teichert & Son to bring cement in the latter's truck to the job site. Teichert's driver had dumped cement at the post holes site and Pruitt was shoveling it into the holes. After the cement was dumped out of the truck the driver exercised no control over it or the shoveling operation. An angle iron fell from the top of the iron fence injuring Pruitt. The court held that Federal was not liable under its policy insuring Teichert for injuries due to the use of this truck while loading and unloading for the reason that the truck's unloading had been fully completed, saying (at p. 385): "It is contended that since some of the cement to be poured for the post holes was still in the truck, the accident occurred during the unloading of the truck, and defendant's policy therefore provides coverage. *The question, however, is not whether the accident occurred during the unloading, but, rather, whether the injury arose out of the use of the vehicle.*

"Although the vehicle need not be, in the legal sense, a proximate cause of the injury, the events giving rise to the claim must arise out of, and be related to, its use. [Citations.]

"There is evidence from which the trial court could have found that the shoveling of cement into the post holes jarred the fence, causing the iron to fall. Such a finding would show a causal relationship between the accident and the cement which had already been removed from the truck. However, as pointed out above, the unloading operation had been completed with respect to that portion of the cement before the accident occurred; and no basis has been suggested for finding a causal relationship between the accident and the cement still in the truck. Accordingly, it cannot be said that the injury arose out of the use of the vehicle." (Italics added.)

In *Entz* (at pp. 384-385) the court sets forth the facts and ruling in *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.,* 229 Cal.App.2d 229 [40 Cal.Rptr. 165], as follows:

"The *San Fernando Valley Crane Service* case likewise involved the delivery of cement. There cement was emptied by a 'mixer truck' by means of a self-unloading device into a receptacle furnished by, or on behalf of, the purchaser and thereafter conveyed by a crane to an elevated location at a building site, where the concrete was to be used. After delivery of the concrete into the bucket receptacle, the deliveror exercised no control over the cement, the bucket receptacle, or the crane.

"In holding that the unloading operation had been completed and that there was therefore no coverage under the truck policy for an accident which occurred while the cement was being transported by the crane, the court said: 'In determining the scope of the coverage afforded, consideration must be given to the intention of the parties to the contract of insurance. It is not reasonable to conclude that such parties intended an extension of coverage to an accident occurring after concrete has been placed in a receptacle furnished by or on behalf of the purchaser and while it is being mechanically conveyed to a location some distance above the ground. . . .

" '. . . the more cogent reasoning leads to the conclusion that when Consolidated [the truck owner], as it had contracted to do, brought the concrete to the job site and deposited it in the receptacle provided by or on behalf of the purchaser, the truck was then unloaded insofar as the concrete so deposited was concerned. At that time that concrete had been placed in the hands of the receiver at the designated reception point.' . . ."

In the case at bench it would seem that the facts showing the truck in question was not being used to unload at the time of the accident were much stronger than those in either *Entz* or *San Fernando Valley Crane Service*. While there is some confusion as to whether the truck was in its final position for unloading, there is no question but the process of unloading had not commenced nor were the crane and buckets yet ready so the cement could be unloaded. If, as held in *San Fernando Valley Crane Service,* the truck was not being used in unloading while the cement which had just been dumped into the bucket was being moved by the crane, certainly the truck in our case was not being used for unloading when it was merely standing by waiting for the receptacle for its contents which could not be unloaded until that receptacle had been attached to the crane and moved into position to accept the cement.

■ While California now, in construing the scope of a

"loading and unloading" provision in an insurance policy, follows the "complete operation" theory rather than the "coming to rest" theory, which theory expands the coverage i..tended by the word "use" (*Entz* v. *Fidelity & Cas. Co., s..pra*, p. 382; *St. Paul Fire & Marine Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1966) 244 Cal.App.2d 826 [53 Cal.Rptr. 650]), no case holds that where the loading or unloading process is not actually in operation, the theory applies. As said in *San Fernando Valley Crane Service, Inc., supra, at* page 236, "it cannot be reasonably said that such expansion of the meaning of the term 'the use of' the motor vehicle is without limitation."

▆▆▆ The truck in the instant case had been partially unloaded at a position on the other side of the building from where the accident occurred. While the crane was being moved to the new location, the truck had been backed away from the prior unloading position and was waiting on an access road for the crane and the buckets. Whether the truck required further backing to be in a position where the buckets would be placed by the crane is not clear from the evidence. An inference possibly could be drawn that it was, and for our purposes we are assuming that it was. However, the evidence shows that it was the duty of the bucket man to tell the truck driver where to place his truck,[3] and there is no evidence that the bucket man did so at this time. The evidence is clear that prior to the accident one act of unloading had occurred and that a new one had not commenced. The driver then exercised no control over any unloading operation; he had to wait until the buckets were in place and told to commence unloading.

It is clear, therefore, that as held in *Entz, supra,* 64 Cal.2d 379, and *San Fernando Valley Crane Service, Inc., supra,* 229 Cal.App.2d 229, as to the situations in those cases, Pacific's truck at the time of the accident was not being used for either loading or unloading, and hence Transport is not obligated to reimburse Home for any part of the Little settlement.

B. *Travelers' Appeal*

▆▆▆ The crane is not covered by Travelers.

As before stated, Lathrop rented the crane from Wilkins. Lathrop was insured by Travelers by a policy which provided coverage for injuries arising out of the operation, use or maintenance of automobiles. The policy in pertinent part defines an automobile: "The following described equipment

---

[3]The truck driver testified that a driver does not back in until he is told to do so—"You stay out of the way. . . ."

shall be deemed an automobile while towed by or carried on an automobile as above defined solely for *purposes of transportation or while being operated solely for locomotion,* but not otherwise; if of the non-crawler type, any power crane or shovel. . . .'' (Italics added.)

The crane in question is a power crane of the noncrawler type.

Travelers contend that the crane was not being operated ''solely for locomotion'' at the time of the accident and that therefore it did not come within the policy's definition of an automobile. At the time of the accident the crane had been moved into position and was stationary. Hydraulic outriggers were set up to prevent any movement of the wheels. Home and the court relied on *Colby* v. *Liberty Mut. Ins. Co.* (1963) 220 Cal.App.2d 38 [33 Cal.Rptr. 538]. In that case Western Iron and Metal Company, insured by Liberty Mutual Insurance Company, owned a truck loaded with steel girders which was driven to school grounds where construction work was in progress. There a mobile crane owned by Progressive Transportation Company, insured by Transport Indemnity Company, and operated by Colby, its employee, was unloading one of the girders from the truck. The girder struck and injured Brinker, Western's truck driver. Brinker brought an action against Colby and Progressive. Transport then brought an action in declaratory relief against Liberty for a determination of the respective obligations of the two insurance companies. The question presented was whether the crane operator was afforded coverage by the Transport policy. Although the opinion does not give the exact language of the Transport policy as to the crane coverage, apparently it was substantially the same as that of the Travelers policy here, namely, that it defined an automobile which it covered as including a crane of the type involved in the case at bench ''while being operated solely for locomotion.''

Like the crane in the case at bench, it was of the mobile type, being, as the court said (at p. 45), ''a self-propelled vehicle capable of moving under its own power from one job to another. Hence it was a motor vehicle. (Veh. Code, § 415.) While it was being used as a crane at the time of the accident, it was in fact being propelled by means of its motor over a limited portion of the premises in the course of such use. The crane operator was thus engaged in the operation of a motor vehicle.''

Colby seems to hold that a power crane of the noncrawler type capable of movement comes within the policy's definition

"being operated solely for locomotion" even though it is stationary at the time of the accident. It is not clear as to whether its immobility at that time was an issue in the case. It is significant that in footnote 2, page 45, the court distinguished *Industrial Indem. Co.* v. *General Ins. Co.*, 210 Cal. App.2d 352 [26 Cal.Rptr. 568], by saying, "[T]he factual situation was not the same as that in the case presently before this court. The record in the earlier case reveals that it was stipulated that the truck on which the crane was mounted was stationary at the time the crane was in use. . . . 'The crane is mounted on a 10 wheel truck chassis. The crane is powered with an engine. . . . This engine operates independently of the truck motor. The truck motor is used solely for locomotion of the truck and has no connection with the operation of the crane.' "

In *Industrial Indem. Co., supra*, the same type of crane as in the instant case was involved and the court had before it the identical language as that contained in the Travelers policy. The court found that the crane there was not an automobile within the definition of the policy.

Colby seems to have been decided upon the fact that the crane would be a motor vehicle under section 415 of the Vehicle Code. That, however, is not the real question. The real question is whether a crane that is capable of self-propulsion and has by its own power been moved around the site of a particular construction job, when stationary and not moving but being operated solely as a crane for lifting objects, is under the terms of an insurance policy "being operated solely for locomotion." So far as appears in the *Colby* opinion, this question was not there considered.

In the instant case the crane probably is a motor vehicle under the Vehicle Code. It had been driven to the Davis campus and to the place of the accident under its own power. However, at the time of the accident it clearly was not being "operated solely for locomotion" or even at all for that purpose. Its hydraulic outriggers were in place to make it immobile and completely stationary. It could not be moved by its own power, or otherwise, until those outriggers were retracted. Its purpose in being where it was located was not to be moved as a vehicle but to be used as a crane.

The Travelers policy covering the crane, as far as relevant here, only applies coverage for injuries arising from the operation, use or maintenance of automobiles. While it covers a crane while being operated as an automobile, it clearly does not cover a crane which is being operated solely for lifting

purposes. The mere fact that both before and after its use as a crane it could be operated as an automobile in nowise made its use as a crane one of operation "solely for locomotion."

In the instant case there is no question but that the crane at the time of the accident was not "being operated *solely* for locomotion," it was stationary, and it was preparing to pick up a bucket for unloading concrete from a truck. (Italics added.) To hold otherwise completely strikes from the policy the words "while being operated solely for locomotion, but not otherwise." A study of the paragraph in which that wording appears leaves no doubt that the type of crane there described (being the type of crane used in the instant case) had to be used solely for locomotion in order to be covered by the policy, first, because the policy so states, and secondly, because as to a crane being towed or carried on an automobile, the policy limits coverage to when it is being used "solely for purposes of transportation."

■ " 'An insurance company has the right to limit the coverage of a policy issued by it and when it has done so, the plain language of the limitation must be respected. [Citations.]' " (*Industrial Indem. Co.* v. *General Ins. Co.* (1962) 210 Cal.App.2d 352, 361 [26 Cal.Rptr. 568], quoting from *Continental Cas. Co.* v. *Phoenix Constr. Co.*, 46 Cal.2d 423, 432 [296 P.2d 801, 57 A.L.R.2d 914].)

Other questions of the application of the insurance policies of both Transport and Travelers in the instant case have been raised by appellants. In view of our decision of the nonapplication of the respective policies, it is unnecessary to consider additional contentions made by appellants.

The judgment is reversed.

Pierce, P. J., and Regan, J., concurred.