[Civ. No. 24105. Second Dist., Div. One. July 27, 1960.]

R. H. MACY AND COMPANY (a Corporation), Respondent,
v. D. PHILIP ROBINSON et al., Appellants.

Wolver & Wolver, Eugene L. Wolver and Robert W. Cooper. for Appellants.

Kaplan, Livingston, Goodwin & Berkowitz and Bayard F. Berman for Respondent.

WOOD, P. J.—Action to recover money due upon written contracts, and upon an open book account and an account stated, for radio and television advertising. The corporation which was owner of the radio and television stations assigned its claim to plaintiff. Defendants Robinson and Wright, co-partners, were sponsors of the advertising. Defendant Simmons conducted an advertising business under the name "Dean Simmons Advertising." In a nonjury trial, judgment was for plaintiff, and against the defendants, on the two causes of action which were based upon written contracts; and judgment was for defendants on the causes of action upon an open book account and account stated. Defendants appeal from the judgment which was in favor of plaintiff.

The principal alleged defense of Robinson and Wright was that Simmons (who placed the advertising with the stations) was an independent contractor and that their legal obligation was to him and not to the owner of the stations. The principal alleged defense of Simmons was that he was the agent of Robinson and Wright who were disclosed principals, and that he, as agent, was not liable for the indebtedness.

Appellants contend that the evidence does not support certain findings, and that the court erred in rulings as to admissibility of evidence.

In 1950 defendants Robinson and Wright were copartners doing business in San Francisco under the name of "San Francisco Pass Book." The business consisted of preparing and selling coupon books, and also selling advertising space therein. The books, which were offered for sale by means of radio and television, contained coupons which could be used in purchasing merchandise or services at reduced prices from certain business firms. Simmons was advertising representative of Robinson and Wright in the San Francisco business. The business as conducted in San Francisco was successful, and Robinson and Wright decided that they would conduct a similar business in New York under the name of "Metropolitan Pass Book." They made arrangements with Simmons that he would be their advertising representative in New York. Steve Hardin was an employee of Simmons. Wright opened an

office on 28th Street and Hardin opened an office on 42nd Street in New York.

General Teleradio, Inc., was the owner of radio station WOR and the owner of television station WOR-TV in New York.

In December, 1950 (before Hardin went to New York), Simmons sent a letter to General Teleradio wherein he stated that Hardin would manage the New York branch office of the Simmons agency and would be booking time for the Metropolitan Pass Book, that the letter would authorize Hardin to sign contracts in the name of Dean Simmons Advertising, and that credit responsibility would be assumed by the Los Angeles office of the agency and all payments would be made from the Los Angeles office.

On January 8, 1951, Hardin and General Teleradio signed an agreement whereby General agreed to broadcast "for sponsor" certain programs (statements advertising coupon books) once a week for 13 weeks commencing January 13. The agreement recited that it was made "between General Teleradio . . . and Dean Simmons Advertising . . . and Metropolitan Pass Book . . . by said Dean Simmons Advertising (hereinafter collectively called Sponsor)." The agreement also provided: "Sponsor shall use such broadcasting time only to advertise Pass Book of Metropolitan Pass Book . . . Sponsor to pay . . . for the 13 week term of this contract." The agreement also provided: "If this agreement is made by WOR with more than one party, the obligations of such parties shall be joint and several." The agreement was signed, as follows: "General Teleradio, Incorporated By William Crawford Dean Simmons Advertising By Steve Hardin."

Also on January 8, Hardin and General Teleradio signed an agreement whereby General agreed to telecast announcements which advertised the Metropolitan Pass Book for eight weeks commencing January 13. The agreement also provided that the Metropolitan Pass Book would sponsor and pay for the telecasts. The agreement was signed, as follows: "General Teleradio, Inc., By R. C. Mayo Director of Sales," and "Accepted By Steve Hardin Dean Simmons Advertising Agency."

Prior to commencing the radio broadcasts, Hardin and General Teleradio signed two letter-agreements whereby the time for commencing the broadcasts was continued for approximately two weeks. Each of the agreements was signed,

as follows: "Accepted Dean Simmons Advertising By Steve Hardin."

On two occasions prior to commencing the telecasts, and on six occasions thereafter, Hardin and General Teleradio signed letter-agreements whereby the schedule for the telecasts was changed, so that some programs were omitted, or produced at other times—with the result that the amounts to be charged were increased or decreased. Some of those agreements were signed, as follows: "Steven Hardin Dean Simmons Advertising." Some of the agreements were signed: "Steve Hardin Account Executive Dean Simmons Adv. Advertising Manager Metropolitan Pass Book."

After the programs had been commenced and after the charges therefor had not been paid, General Teleradio made further inquiries regarding the financial responsibility of Simmons, Robinson, and Wright. On January 22 General notified Hardin that it would be necessary to pay weekly as provided in the contracts or the programs would be discontinued. On that day, Robinson paid $4,000 to Simmons. Also on that day, Simmons sent a letter to General wherein he stated that Hardin had notified him that General had threatened to discontinue the programs unless payments were made weekly. In that letter Simmons sent a check for $1,000, and he asked that the program be continued on a credit basis. He also said therein that he would have Robinson and Wright sign on all the contracts "along with the agency" if General wanted them to sign.

On February 2 General replied to Simmons' letter and stated that it (company) could not alter its original decision that the payments must be made weekly.

In the first part of February, Simmons' representation in connection with the programs was terminated. He testified that he notified General by telephone that he had terminated his representation of the Pass Book.

On February 8 Robinson and Wright paid $3,153.72 to General, and on that same day they appointed an advertising agency in New York as their representative. General declined to accept advertising from the new representative until two of the Pass Book invoices, amounting to $4,590, had been paid. On March 7 Robinson went from Los Angeles to New York, conferred with Mr. Peterson of General Teleradio, and paid $4,590 to General. Thereafter the new representative placed advertising with General and the programs were resumed.

About February 21 Hardin started an advertising agency of his own, and he continued to place Pass Book advertising with General.

On March 9 Hardin and General signed another agreement whereby General agreed to telecast advertising for Metropolitan Pass Book. The agreement stated that it was made by General, as owner of the station, and Dean Simmons Advertising and Metropolitan Pass Book, as "Sponsor." The agreement was signed by Hardin, as follows: "Dean Simmons Advertising By: Steve Hardin." It is to be noted that this agreement was made after Simmons had discontinued his representation of the Pass Book.

On March 16 Hardin and General signed another agreement which stated that it was made by General, as owner of the station, and Steve Hardin Advertising and Metropolitan Pass Book Company, as "Sponsor." The agreement was signed by Hardin, as follows: "Steve Hardin Advertising for Metropolitan Pass Book Company By: Steve Hardin."

On March 30 Hardin and General signed an agreement which was similar to the one of March 16. The agreement of March 30 was signed by Hardin, as follows: "Steve Hardin Advertising By: Steve Hardin."

The Pass Book venture in New York was not a success, and by August, 1951, General was claiming that Robinson, Wright, and Simmons owed $2,038.12 and interest thereon, as the balance due under the agreements of January 8; and was claiming that Robinson and Wright owed $5,536.73 and interest thereon, as the balance due under the other agreements.

This action was commenced in June, 1954. As above indicated, the alleged defense of Robinson and Wright was that Simmons was an independent contractor while he was their advertising representative, and that Hardin was an independent contractor while he was one of their advertising representatives (after Simmons' representation was terminated).

The judgment was for plaintiff against Robinson, Wright, and Simmons for $2,038.12 and interest, or a total of $2,945.08; and judgment was for plaintiff against Robinson and Wright for an additional amount of $5,536.73 and interest, or a total additional amount of $8,000.57.

The court found, as follows: General Teleradio, Inc., and the three defendants Robinson, Wright and Simmons entered into the two written agreements of January 8, 1951, for the

broadcasting and televising programs, and that General and those three defendants subsequently modified those agreements as to the periods of time to be covered by the radio programs, and as to schedules and amounts to be paid for the television programs. By August 4, 1951, General had rendered all the radio and television services for defendants Robinson, Wright, and Simmons, which it had agreed to render under said agreements of January 8. The balance due from those three defendants, under the radio and television agreements of January 8, is $2,038.12 and interest thereon.

The court also found, as follows: General Teleradio, Inc., and the two defendants Robinson and Wright entered into the three written agreements of March 9, 16, and 30, for broadcasting and televising programs. By August 4, 1951, General had rendered all the television services, for defendants Robinson and Wright, which it had agreed to render under said agreements of March 9, 16, and 30. The balance due from those two defendants, under the three television agreements of said dates, is $5,536.73 and interest thereon.

As above stated, there were findings that there was no open book account or account stated.

■ Appellants Robinson and Wright assert that the findings to the effect that they entered into the radio and television agreements of January 8 are not supported by the evidence. It does appear that they did not sign the agreements. The radio agreement states that it was made "between" General Teleradio . . . and Dean Simmons Advertising . . . and Metropolitan Pass Book . . . by said Dean Simmons Advertising (hereinafter collectively called Sponsor)." In addition to the signature on behalf of General Teleradio, the agreement was signed: "Dean Simmons Advertising by Steve Hardin." The television agreement of January 8 states that the Metropolitan Pass Book would sponsor and pay for the telecasts. In addition to the signature on behalf of General Teleradio, that agreement was signed: "Accepted By Steve Hardin Dean Simmons Advertising Agency." It is conceded that Robinson and Wright made arrangements with Simmons that he would be their advertising representative in New York in connection with the Metropolitan Pass Book. It is also conceded that Hardin was authorized to act for Simmons with respect to those contracts. Robinson and Wright were partners, and it is conceded that she (Wright), with the approval of Robinson, opened an office in New York, on behalf of the partnership known as Metropolitan Pass Book,

for the purpose of advertising and selling coupon books by means of radio and television. Wright testified that she and Hardin discussed each purchase of radio and television time before the purchase was made, and they discussed the merits of the particular program from an advertising point of view, and if she approved the purchase that was under discussion, Hardin would make the purchase from the station. Soon after the programs had been commenced, when General notified Simmons that it would be necessary to pay weekly, Robinson paid $4,000 to Simmons and made a notation on the check, as follows: ''Adv. against payt's met. Pass Book Accts.'' (It is to be noted that the agreement stated that the payments were to be made weekly.) After receiving that check, Simmons paid $1,000 to General. Harry Schooler was sales manager in the New York office of Robinson and Wright, and he was authorized to sign checks on behalf of Robinson. Checks on behalf of the Metropolitan Pass Book, issued in the New York office, required the signatures of Wright and Schooler. On February 8, after General notified Schooler that unless a payment was made on the Pass Book account the programs would be taken off the air, Schooler sent a check for $3,153.72 to General. The check was signed by Wright and Schooler. On March 7, after General notified Robinson that no further advertising would be accepted until $4,590 had been paid, Robinson went from Los Angeles to New York, and after conferring with a representative of General, Robinson directed Wright and Schooler to pay that amount to General by check. They complied with the request. It thus appears that Robinson and Wright took an active and determinative part in obtaining the particular radio and television time that would be purchased; and that they paid large amounts of money directly to the stations. Their theory, with respect to their contention that Simmons was an independent contractor, seems to be that Simmons purchased the radio and television time upon his own financial responsibility and at his financial risk of being able to resell it to them. This theory is unrealistic in view of the manner in which the Pass Book business was conducted. It is apparent that the time was purchased only when it had been determined prior to the purchase that Robinson and Wright would purchase certain designated time. The testimony of Wright that she and Hardin discussed and determined each purchase before it was made, and the fact that Robinson and Wright paid large

amounts of money directly to the stations, might well be regarded as a refutation of the theory that Simmons was an independent contractor. It could be inferred from the evidence that Simmons was an agent of Robinson and Wright, and he was not an independent contractor. The court did not make an express finding that Simmons was an agent, or make an express finding that he was not an independent contractor, but there is an implied finding that Simmons was an agent of Robinson and Wright. In the finding that Robinson, Wright, and Simmons entered into the agreements, it is implied that Simmons was the agent of Robinson and Wright in the matter of contracting for advertising, and that Hardin (agent of Simmons) in signing the agreements was acting as subagent of Robinson and Wright. The findings to the effect that Robinson and Wright entered into the agreements of January 8 are supported by the evidence.

Appellants Robinson and Wright also contend that findings to the effect that they entered into the television agreements of March 9, 16, and 30 are not supported by the evidence. When these agreements were made, Simmons was not a representative of Robinson and Wright, but Hardin, who signed these agreements and the agreements of January 8, was representing Robinson and Wright in a capacity that was similar to the capacity in which Simmons had represented them in making the agreements of January 8. All the payments which were made under the provisions of the March agreements were made directly to the television station by Robinson and Wright. On March 21, Schooler, who was authorized to sign checks on behalf of Robinson and Wright, sent a letter to the station wherein he said that ''all time for Metropolitan Pass Book is placed through Steve Hardin Advertising Agency,'' and payment for any time purchased by Hardin would be guaranteed ''by our company'' and we will continue paying ''our account'' weekly as in the past. The statements made herein with respect to the preceding contention (regarding the January agreements) are applicable with respect to this present contention as to the March agreements. It could be inferred that, in March, Hardin was an agent of Robinson and Wright, and that Hardin, in signing the March agreements, was acting as their agent. The findings to the effect that Robinson and Wright entered into the March agreements are supported by the evidence.

Appellants Robinson and Wright also contend that the findings that General had rendered all the radio and tele-

vision services which it had agreed to render, under the various agreements, were not supported by the evidence. They argue that the only evidence in support of those findings was an answer of witness Kizis which was his conclusion regarding the performance of the agreements. The deposition of Kizis was taken, in New York, by plaintiff. He testified to the effect that during 1951 he was an employee of General and was in charge of sales service; it was his job to see that programs "were aired" satisfactorily; while doing his work he checked with the various divisions of the station, such as production and accounting; his method of procedure in the performance of his duties was to obtain information from reports and data as to the details of the contracts, and then he was in a position to note any deviations, such as pre-emptions and interruptions; he performed such duties with . respect to the contracts of Metropolitan Pass Book; he gave his report to Miss Pritoka, who was an employee in the accounting division of the station. He was asked a question which was in substance, as follows: On the basis of the reports and data submitted to you, and on the basis of your own reports, can you state that the programs of the Metropolitan Pass Book Company were aired and televised, and that the contracts were performed? The witness replied, "Yes, I can." Counsel for said appellants made a motion to strike the answer on the ground that it was a conclusion. Apparently, the judge regarded counsel's statement as an objection. The judge said that objection was overruled. Then the witness was asked: "And do you so state?" The witness replied, "Yes, I so state." Counsel for said appellants objected to the answer on the ground that "it calls for hearsay." The objection was overruled. Said appellants assert that this answer was a conclusion of the witness. The testimony was given in New York by deposition, and no one appeared on behalf of appellants at the taking of the deposition, and appellants did not submit any cross-interrogatories. Under the circumstances the appellants are not in a position to object to the form of the question. The witness testified as to the manner in which he performed his duties. His statements to the effect that the programs were "aired and televised" were statements as to what he observed and as to information received by him in the performance of his duties. Under the circumstances here, the court did not err in receiving the testimony. Further, with respect to the sufficiency of the findings that the services were performed, Miss Pritoka

testified, by deposition, that in 1951 she was the head billing clerk in the accounting department of the station, and she was in charge of the billing pertaining to the defendants; the bookkeeping system with respect to the defendants included checking of the "logging" from the master log for radio and checking the "logging" from production sheets for television; if the master log or production sheet shows "broadcasts aired" in accordance with the contract, the log time is posted; if the broadcasts contracted for are aired, the bill for broadcasting is mailed immediately; according to such procedure, she made up the invoices for Simmons, Hardin, and Metropolitan Pass Book, and mailed the invoices to them. Copies of those invoices were received in evidence. The invoices showed the broadcast dates, time used, titles of programs, charges, and commissions. Her testimony shows that the invoices were made in the regular course of business, at or near the time the services were allegedly performed. Section 1953f of the Code of Civil Procedure provides: "A record of an act . . . shall . . . be competent evidence if the custodian . . . testifies to its identity and the mode of its preparation, and if it was made in the regular course of business, at or near the time of the act . . . ." The findings to the effect that General had rendered all the services which it had agreed to render are supported by the evidence.

 Appellants Robinson and Wright also contend that the finding that General "billed said defendants, by means of written invoices" is not supported by the evidence. They argue that the invoices were billed solely to Simmons at his address on 42nd Street, New York, which is an address different from the address of said appellants (address on 28th Street). Miss Pritoka, the head billing clerk, testified further that she divided the invoices into two groups, that is, those addressed to Simmons and those addressed to Hardin; that copies of the first group were sent to Simmons, and that copies of the second group were sent to Hardin. Since Simmons and Hardin were agents of Robinson and Wright, the receipt of the invoices by the agents would constitute receipt by the principals. The finding that General billed the defendants is supported by the evidence.

Upon the hearing of the motions for a new trial, the court, in lieu of granting a new trial, vacated the findings and judgment and reopened the case for the introduction of evidence on the issue of accord and satisfaction. Thereafter, the answers of defendants (Robinson, Wright, and Simmons) were

amended to allege accord and satisfaction in that on March 7, 1951, defendants Robinson and Wright paid General Teleradio $4,590 in satisfaction of its claim, and on April 20, 1951, said defendants paid General $240 in satisfaction of its claim. Upon a trial of those issues, the court found there was no accord and satisfaction. Findings were made, and judgment was entered.

Appellants (Robinson, Wright, and Simmons) contend that the findings that there was no accord and satisfaction are not supported by the evidence. They argue that the amount that was due on the account, when Simmons' representation was terminated in the early part of February, 1951, was $4,450.69; that when Robinson went to New York about a month later (March 7) and had a conversation with Peterson (representative of General), Peterson did not indicate the balance that was due, but he had in his possession two missing invoices aggregating $4,590; that Peterson requested the payment of $4,590, and they agreed that was the true balance; that Robinson paid that amount in accord and satisfaction of the account. With respect to the asserted accord and satisfaction based upon the payment of $240, appellants argue that when Hardin made the purchase on April 20, 1951, he said that by reason of a miscalculation a balance of $240 was due to the station; Schooler asked Peterson about the balance, and Peterson said that was the balance due; pursuant thereto that amount was paid to the station; the check therefor bore the notation that it was in full payment of the balance due on the Hardin account. Robinson testified that, on March 7, Peterson said that $4,590 was the balance due and if that amount was paid there were no further claims. Jack Linder, a witness called by appellants, testified that he was present at a conversation in New York between Robinson and Peterson, about March 7; in that conversation Peterson said that the amount owed was $4,500; Robinson asked if everything would be all right if he paid that amount, and whether they would go on and further their account with the station; Peterson replied, "Yes." With respect to the asserted accord and satisfaction based upon the payment of $240, the check which is an exhibit shows that the notation thereon is, as follows: "To apply on bal of Steve Hardin Adv. Met. Pass Book Account." This notation tends to refute appellants' argument that said amount was full payment of the Hardin account. The issues as to accord and satisfaction presented questions of fact for

the determination of the trial judge. The findings as to accord and satisfaction are supported by the evidence.

Appellant Simmons contends that during the time he was representing Robinson and Wright in New York, from approximately January 8 to February 5, 1951, he was acting solely as agent for them, and as such agent he was not liable for any amount. As above shown, the radio agreement of January 8 states that it was made "between General Teleradio . . . Dean Simmons Advertising . . . and Metropolitan Pass Book . . . by said Dean Simmons Advertising (hereinafter referred to collectively as Sponsor)." That agreement states that the *sponsor* will *pay* for the 13 week term. In addition to the signature on behalf of General, the agreement was signed: "Dean Simmons Advertising by Steve Hardin." It therefore appears from the express wording of the agreement that Simmons was a primary obligor and liable thereunder. The television agreement, which was also made on January 8, is in letter form with a blank printed contract form attached thereto. The letter part of the contract states that Metropolitan Pass Book is the sponsor. In addition to the signature on behalf of General Teleradio, the agreement is signed: "Accepted By Steve Hardin Dean Simmons Advertising Agency." General made inquiries as to the financial responsibility of Simmons and Robinson. In a letter of January 22 written by Simmons to General, he said Hardin had notified him that it would be necessary to make payments weekly or that the station would take the program off the air. He also said therein that it did not seem reasonable to make such requirement "in view of the financial standing of this agency." He also said therein, "If you wish I will have the account sign on all contracts along with the agency." He also said, "I would really appreciate it if this credit could be established as I plan to do business, not only for Pass Book, but other accounts in the New York area." It thus appears that the station regarded Simmons as a primary obligor, and that Simmons considered that he was liable under the agreement. Apparently General and Simmons considered that the letter-agreement, with the blank printed form attached, which was made on the same date the radio agreement was made, was a part of same transaction involved in the radio agreement and that the same liability was created under each agreement. Apparently the briefs are presented upon the basis that the liabilities of the parties are the same under each agreement. The court was justified in concluding that Simmons was also liable under the television agreement.

In view of the above conclusions, it is not necessary to discuss other contentions on appeal.

The judgment (as to all appellants) is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied August 22, 1960.