[Civ. No. 26419. Second Dist., Div. Three. Sept. 10, 1963.]

JACK COLBY et al., Plaintiffs and Respondents, v. LIBERTY MUTUAL INSURANCE COMPANY et al., Defendants and Appellants; O. JOHN BRINKER, Defendant and Respondent.

*Formerly Rules on Appeal, rule 48(a).

40

Gilbert, Thompson & Kelly and Jean Wunderlich for Defendants and Appellants.

Dryden, Harrington, Horgan & Swartz and Vernon G. Foster for Plaintiffs and Respondents.

No appearance for Defendant and Respondent.

FORD, J. — Defendants Liberty Mutual Insurance Company (hereinafter called Liberty) and Western Iron and Metal Company (hereinafter called Western) have appealed from a judgment in an action for declaratory relief brought by Jack Colby, Progressive Transportation Company (hereinafter called Progressive) and Transport Indemnity Company (hereinafter called Transport). The problem presented relates to the respective obligations of the two insurance companies, Liberty and Transport, with respect to the cause of action of O. John Brinker against Jack Colby, a crane operator, and Progressive, a crane owner, for damages for personal injuries

alleged to have been suffered because of the negligence of Colby in the operation of the crane.

The findings of fact of the trial court are in part as follows: 1. Prior to May 11, 1959, Liberty issued to Western its policy of insurance entitled "Automobile Policy Combination Comprehensive." The policy, which was in full force and effect on May 11, 1959, gave protection for bodily injury liability with a limit of coverage for injury to one person of $100,000. 2. Prior to May 11, 1959, Transport issued to Progressive its policy of insurance. That policy, which was in full force and effect on May 11, 1959, gave protection for bodily injury liability with a limit of coverage of $10,000. 3. On May 11, 1959, a truck owned by Western and covered by the Liberty policy was loaded with steel girders and driven by O. John Brinker to the premises of a school where construction work was in progress. 4. At that time and place, a mobile crane owned by Progressive was being operated by Jack Colby within the course and scope of his employment for Progressive. 5. While the crane was being used to unload one of the girders from the truck, the girder was caused to strike O. John Brinker, who thereby sustained bodily injuries. 6. Brinker brought an action in the superior court against Colby and Progressive to recover damages for his injuries. 7. "The sole basis for liability on the part of Colby to Brinker is the negligence of Jack Colby in the manner in which he operated the crane in the unloading of the girder." 8. "The sole basis for liability on the part of Progressive is the liability of Jack Colby which may be imputed to Progressive by virtue of the fact that Colby was acting as the employee of Progressive within the course and scope of his employment."

The judgment is in part as follows: 1. Liberty is primarily liable under its policy to discharge any liability on the part of Jack Colby and Progressive which may arise in favor of O. John Brinker as a result of the accident, such obligation being to the extent of the Liberty policy limit for bodily injury liability of $100,000. 2. Transport is obligated to discharge any liability in favor of Brinker and against Progressive which may exceed the limit of liability of $100,000 of the Liberty policy, until the limit of $10,000 for bodily injury liability coverage contained in the Transport policy is reached. 3. Liberty is obligated to defend Jack Colby and Progressive from liability in the pending action in the superior court instituted by Brinker "in the same proportion as it may become obligated to discharge the liabilities of Jack Colby and Progressive . . . ." 4.

Transport is obligated to defray the costs of defending Progressive in that action "in the same proportion as it becomes obligated to discharge any liability arising in favor of O. John Brinker and against Progressive . . . ."

Included in the definition of "insured" in the Liberty policy is "any person while using an owned automobile . . . and any person or organization legally responsible for the use thereof." It is also provided as follows: "Use of an automobile includes the loading and unloading thereof."

At the trial, O. John Brinker was called as a witness by the plaintiffs. He was a truck driver for Western. With respect to the unloading of the girders at the construction site he testified in part as follows: "The crane swung around, picked up the girders, lifted up, swung around, and lifted them up and put them on the columns." It was one continuous operation, the girders being moved directly from the truck to their position on the building under construction. It was necessary, however, "to back the crane up to put it in position."[1] The vehicle on which the crane was mounted moved "on its own rubber wheels." Mr. Brinker held a rope attached to each girder as it was being unloaded so as to aid in guiding the girder to the place where it was to be put down. The accident occurred when the crane operator dislodged the brake, and the girder being moved struck Mr. Brinker.

Another witness testified that the girder had been moved about 50 feet from the truck when the accident occurred. The girder hit Mr. Brinker before the crane moved backward. The girder was 47 feet long. The crane was a 20-ton crane.

 The first contention of the defendants Liberty and Western is that the cause of the accident was not a loading or unloading operation. They assert that what Colby did was part of the "construction activity" because the girders "were lifted in place in the construction pattern." Under the governing law, however, the determination of the trial court was correct.

 In *American Auto. Ins. Co.* v. *American Fid. & Cas. Co.,* 106 Cal.App.2d 630, at pages 634-635 [235 P.2d 645], the court stated: "Generally speaking, in determining whether the accident occurred during the unloading of a motor vehicle within the meaning of a 'loading or unloading' provision in a liability policy, the courts have adopted one of two theories, the 'coming to rest' or the 'complete operation' doctrine.

---

[1] Mr. Brinker testified that the mobile crane was on wheels and could move under its own power from one job to another.

"Of the two, the 'coming to rest' doctrine gives the more limited construction to the 'loading and unloading' provision. Under this doctrine, 'unloading' includes only the actual removing or lifting of the article from the motor vehicle up to the moment when it has actually come to rest and has started on its course to be delivered by other powers and forces independent of the motor vehicle, and the motor vehicle itself is no longer connected with the process of unloading. The motor vehicle is then said to be no longer in use.

"Under the 'complete operation' doctrine, which is the broader of the two, 'unloading' is regarded as embracing all the operations which are required in any specific situation to effect a completed delivery of the article. For practical purposes, this doctrine makes no distinction between 'unloading' and 'delivery.'

■ "It has uniformly been held that the 'loading and unloading' provision in insurance contracts, such as involved here, is one of extension. It expands, rather than limits, the term 'the use of' the motor vehicle somewhat beyond its usual connotation so as to bring within the policy some acts in which the motor vehicle itself does not play any part."

■ In the present case, the activity in the course of which Mr. Brinker was injured constituted an unloading of the truck under either theory. It was one continuous operation and the girder had not come to rest. There is no logical basis for distinguishing between the case where the girder is unloaded onto the ground and the case where it is directly placed in position on the building under construction. (See *American Auto. Ins. Co.* v. *American Fid. & Cas. Co., supra,* 106 Cal.App.2d 630, 638; *Indemnity Ins. Co.* v. *Old Dominion Hoisting Service,* 251 F.2d 382, 384.)

In *Industrial Indem. Co.* v. *General Ins. Co.,* 210 Cal.App.2d 352 [26 Cal.Rptr. 568], a similar problem was presented. There a truck driver was hit by a section of pipe which was being removed from a truck by means of a crane operated by the crane owners' employee. He brought suit against the crane operator and the crane owners to recover damages arising from his personal injuries. The insurance company (Industrial) which had issued a policy of insurance to the crane owners sought declaratory relief as to its obligations and those of another insurance company (General) whose policy covered the operations of the truck. The appellate court said in part (210 Cal.App.2d at pp. 356-358): "Where a person is loading or unloading a truck it has been uniformly held that such person

is 'using' that truck within the meaning of insurance policies similar to those present here and is therefore an additional insured under the policy. (See *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.,* 190 Cal. App.2d 194, 203 [11 Cal.Rptr. 762] ; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.,* 142 Cal.App.2d 126, 134 [298 P.2d 109].) . . . Here, while the truck does not form a legal basis of liability to the truck driver, under the terms and conditions, General is obligated to defend and indemnify the crane operator and its owners as additional insureds because their liability to the truck driver was incurred in 'using' that truck . . . . Here the crane operator was using the Hurst truck in the sense of unloading it. The mere fact the crane, as an independent instrumentality, was also used to accomplish this objective does not change the result.''

In that case, in which the position of Industrial was similar to the position of Transport in the present case, it was also stated (210 Cal.App.2d at p. 359) : ''Industrial concedes that the general liability provisions of its policy cover the crane owners as named insured for liability arising from activities of the crane. It argues, however, that the negligent crane operator employee is not covered by its policy as an additional insured. It therefore concludes that General, under whose policy the crane operator is covered, is primary, since the insurance alone covering the negligent employee is deemed primary over a policy covering a person vicariously liable. (See *Continental Cas. Co.* v. *Phoenix Constr. Co.,* 46 Cal.2d 423, 428-429 [296 P.2d 801, 57 A.L.R.2d 914] ; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co., supra,* 142 Cal.App.2d 126, 136.) Under the cases just cited, Industrial's conclusion must be sustained if the crane operator is not an additional insured within the meaning of the Industrial policy." After discussing the provisions of the policy the court concluded as follows (210 Cal.App.2d at p. 362) : ''Therefore, since Industrial's policy does not cover the crane operator, and General's does, the General policy is primary with respect to coverage and it then follows that General is also obligated to furnish a defense to the action against the crane operator and its owners. (See *Continental Cas. Co.* v. *Phoenix Constr. Co., supra,* 46 Cal.2d 423, 429; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co., supra,* 142 Cal.App.2d 126, 136.) ''

The problem which must be resolved is whether the crane operator is afforded coverage by the policy issued by Transport to Progressive. . It is clear from the evidence that

the mobile crane was a self-propelled vehicle capable of moving under its own power from one job to another. Hence it was a motor vehicle. (Veh. Code, §415.) ▇ While it was being used as a crane at the time of the accident, it was in fact being propelled by means of its motor over a limited portion of the premises in the course of such use. The crane operator was thus engaged in the operation of a motor vehicle. (See *Marshall* v. *County of Los Angeles,* 131 Cal.App. 2d 812, 814 [281 P.2d 544].) Consequently, under the reasoning of *Wildman* v. *Government Employees' Ins. Co.,* 48 Cal.2d 31 [307 P.2d 359], and *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.,* 58 Cal.2d 142 [23 Cal.Rptr. 592, 373 P.2d 640], as a matter of law the automobile liability policy issued by Transport to Progressive covered the crane operator in his use of the mobile crane under the circumstances of the present case. (See also *Bonfils* v. *Pacific Auto Ins. Co.,* 165 Cal.App.2d 152 [331 P.2d 766].) ▇ The fact that such use was in the course and scope of Colby's employment by Progressive does not detract from this view because the applicable statutory language as to liability of the owner for permissive use (now found in section 17150 of the Vehicle Code) is that liability for negligence exists when the vehicle is operated "in the business of the owner or otherwise."[2]

▇ The defendants Liberty and Western contend that the judgment is erroneous with respect to the determination that "Transport's policy was excess over Liberty['s] policy." They direct attention to the following provision of the Liberty policy (part of which the defendants have italicized): "OTHER INSURANCE. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such

---

[2]The judgment in the present case was rendered before the clarification of the governing law by *Interinsurance Exchange* v. *Ohio Cas. Ins. Co., supra,* 58 Cal.2d 142.

In *Industrial Indem. Co.* v. *General Ins. Co., supra,* 210 Cal.App.2d 352, the factual situation was not the same as that in the case presently before this court. The record in the earlier case reveals that it was stipulated that the truck on which the crane was mounted was stationary at the time the crane was in use. It was further stipulated as follows in the earlier case: "The crane is mounted on a 10 wheel truck chassis. The crane is powered with an engine, located within a housing, adjoining the cab of the crane. This engine operates independently of the truck motor. The truck motor is used solely for locomotion of the truck and has no connection with the operation of the crane." Moreover, unlike the situation in the present case, no party presented any contention that the *Wildman* and *Interinsurance Exchange* cases had any bearing upon the determination of the appeal.

loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; *provided, however, the insurance under this policy with respect to loss arising out of the maintenance or use of any hired automobile insured on a cost of hire basis or the use of any non-owned automobile shall be excess insurance over any other valid and collectible insurance.*"

It is asserted that the "crane operations, being carried out by a 'non-owned' vehicle, if covered at all, are covered by Liberty only as excess over all other valid and collectible insurance." But Liberty's liability is based not upon the use of the crane as such but rather upon the fact that the accident occurred in the course of unloading the truck of Western. The truck could only be unloaded by the aid of some outside instrumentality. As stated in *Industrial Indem. Co.* v. *General Ins. Co., supra,* 210 Cal.App.2d 352, at page 358: "Here the crane operator was using the Hurst truck in the sense of unloading it. The mere fact the crane, as an independent instrumentality, was also used to accomplish this objective does not change the result." (See also *Employers etc. Ins. Co.* v. *Pacific Indem. Co.,* 167 Cal.App.2d 369, 376 [334 P.2d 658].)

The problem of the effect of the respective "other insurance" provisions of the policies, however, is not solved by the rejection of Liberty's argument which has just been considered. The provision found in the Liberty policy has been noted hereinabove. The pertinent provision of the Transport policy is: "If there is other insurance or self-insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable amounts of all such other insurance or self-insurance."

In *American Auto. Ins. Co.* v. *Seaboard Surety Co.,* 155 Cal.App.2d 192, the court said at pages 195-196 [318 P.2d 84]: "The reciprocal rights and duties of several insurers who have covered the same event do not arise out of contract, for their agreements are not with each other. See *Offer* v. *Superior Court,* 194 Cal. 114, 118 [228 P. 11]; *Fireman's etc. Co.* v. *Palatine Ins. Co.,* 150 Cal. 252, 256 [88 P. 907]. Their respective obligations flow from equitable principles designed to accomplish ultimate justice in the bearing of a specific burden. As these principles do not stem from agreement between the insurers their application is not con-

trolled by the language of their contracts with the respective policy holders."

Thereafter, in the case last cited, the court considered the problem of "adjusting the insurers' equities in the light of the 'other insurance' provisions of their respective policies," and stated (155 Cal.App.2d at pp. 198-199): "That of American provides for proration except in circumstances not here pertinent, as follows: 'If the insured has other insurance against a loss covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; . . .' The Seaboard policy contains an excess clause as follows: 'In the event that there shall be in effect any other good, valid and collectible insurance insuring to the benefit of the insured, or any additional insured hereunder with respect to loss or claim covered hereby, then this insurance shall be excess insurance only, over and above the amount of any such other good, valid and collectible insurance.' The limits of the two policies are the same and substantially in excess of the amount of the Whaley judgment.

"This case lends itself to solution upon the basis of these policy provisions independently of the equities which in proper cases, as in subrogation instances, override the exact terms of the policies in the interest of substantial justice. The American provision renders it liable for its pro-rata portion of the loss, in this case one-half, and the insured after paying can collect that much and no more from that insurer. It was so held in *Fidelity etc. Co.* v. *Fireman's F. I. Co.*, 38 Cal.App.2d 1, 5 [100 P.2d 364]. Hence the policy is to that extent 'good, valid and collectible' other insurance within the purview of the Seaboard policy, which in that event protects the insured with excess insurance 'over and above the amount of any such other good, valid and collectible insurance,' — namely, to the extent of one-half of the total loss. This same result was reached, through imposing overriding equitable principles, upon consideration of conflicting prorate and excess clauses in *Air etc. Co.* v. *Employers' Liab. etc. Corp.*, 91 Cal.App.2d 129 [204 P.2d 647]; *Peerless Cas. Co.* v. *Continental Cas.* Co., 144 Cal.App.2d 617, 619-623 [301 P.2d 617]; and *Canadian Indem. Co.* v. *Ohio Farmers Indem. Co.* (D.C.N.D.Cal.) 140 F.Supp. 437, 439." (See also *Truck*

*Ins. Exchange* v. *Torres,* 193 Cal.App.2d 483, 489-491 [14 Cal.Rptr. 408].)

The reasoning of *American Auto. Ins. Co.* v. *Seaboard Surety Co., supra,* 155 Cal.App.2d 192, is applicable to the present case and requires the determination that each insurer is liable for its pro rata portion of the loss. ▮ If the record contained no uncertainty as to the monetary extent of the coverage for bodily injury of the Liberty policy, this court would be free to modify and affirm the judgment. (3 Witkin on California Procedure, pp. 2374-2375.) While the trial court found that the Liberty policy "gave protection for bodily injury liability with a limit of coverage for injury to one person of $100,000," at the trial it was stipulated that "the limits of the Liberty Mutual policy . . . [were] $500,000 for injury to one person and $1,000,000 for injury in any accident." Consequently, it is appropriate to reverse the judgment with directions to the trial court. The trial court will thus be able to resolve the uncertainty just noted.

The judgment is reversed with directions to amend the findings of fact and conclusions of law and thereupon to enter judgment in accordance with the determination of the respective obligations of the insurers as set forth in this opinion.

Shinn, P. J., and Files, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied November 6, 1963. Peters, J., was of the opinion that the petition should be granted.