[Civ. No. 22307.   First Dist., Div. One.   June 13, 1966.]

CALIFORNIA STEEL BUILDINGS, INC., Plaintiff and Respondent, v. TRANSPORT INDEMNITY COMPANY, Defendant and Appellant.

D. Ralph Cesari, Andre V. Tolpegin and Robert L. Mezzetti for Defendant and Appellant.

Hauerken, St. Clair, Zappettini & Hines, Cyril Viadro and Eugene M. Premo for Plaintiff and Respondent.

SIMS, J.—Defendant Transport Indemnity Company has appealed from a judgment awarding plaintiff, California Steel Buildings, Inc., the sum of $11,491.82 which represents the

amount allegedly expended in the defense of a claim for personal injuries which plaintiff asserts was covered by a policy of insurance issued by defendant to a supplier who, at the time of the accident, was furnishing cement in a truck to a building under construction by plaintiff as general contractor.

Defendant insurer defines the basic issue as whether or not the general contractor was using the concededly insured truck at the time of the accident. It asserts that the facts compel a negative answer on this issue and that therefore plaintiff's possible liability was not covered by its policy. The insurer further asserts that the trial court erred in refusing to admit into evidence the policy of insurance carried by plaintiff, and in admitting certain evidence in relation to the services performed by and the charges of an attorney without adequate foundation.

For the reasons hereinafter expressed it is concluded that plaintiff was entitled to coverage under defendant's policy by reason of its "use" of the truck; and that the record reflects that defendant has failed to preserve what right it might have had to litigate the existence and priority of other insurance. Error is found in the admission of evidence on the issue of plaintiff's damages, and the case is remanded for a proper determination of that question.

### Plaintiff was entitled to coverage under defendant's policy

The facts relating to the principal issue were the subject of an agreed statement which in turn was the source of the trial court's findings of fact. The latter reveal: The plaintiff was a general contractor engaged in the erection of a building. The claimant was an independent cement finishing subcontractor employed on the job site. Prior to the accident the electrical subcontractor had laid unprotected electrical conduits on the ground. At the request of the electrical subcontractor and of the cement supplier plaintiff procured and brought planks to the job site, which were placed on the ground within the uncompleted building for the sole purpose of enabling the supplier's cement trucks, including the one involved in the accident, to reach the point where they were to be unloaded without damaging the conduits, or, as elsewhere stated, to assist the truck in reaching the point where it would be unloaded.

On February 20, 1951, the claimant was standing on one of these planks signalling to put a cement truck of supplier into the partially completed building. The truck was backing for the purpose of unloading cement which had been ordered and was being paid for by plaintiff. While it was thus backing, the truck ran over the plank upon which the claimant was standing and caused it to be depressed into a ditch with the result that the claimant was thrown into the air and sustained certain personal injuries as he fell back to the ground.

The claimant thereafter brought suit against plaintiff, the cement supplier and other defendants to recover damages for personal injuries. At the time of the accident the truck was covered by a policy of liability insurance which was then in full force and effect and had been issued to the cement supplier by defendant. Defendant undertook the defense of its named insured and obtained a dismissal for a $1,000 payment. As a result it was familiar at all times with all the facts and circumstances out of which the action arose. Plaintiff gave defendant notice of the occurrence of the accident and tendered its defense to defendant. Upon the latter's refusal, plaintiff proceeded with the defense of the action on its own behalf. The case was tried three times resulting in a jury disagreement on two occasions, and finally in a defense verdict in favor of plaintiff herein, and against the claimant.

In accordance with the stipulation of the parties the court first determined the question of liability, and then took evidence, hereinafter discussed, on the question of the reasonableness of the attorneys' fees expended by plaintiff, or on its behalf. According to the agreed statement of facts the following were the only issues first before the court: "(1) Whether the policy of defendant covered the liability of plaintiff for said accident; (2) If it covered said liability, whether defendant was required to defend said action on behalf of plaintiff." The trial court answered each question in the affirmative in its interlocutory decision, and so framed its final conclusions of law.

The trial court rejected defendant's proffer of findings to the effect that defendant did not issue a policy of insurance to nor was it in any other way contractually bound to plaintiff, and that plaintiff was not using the vehicle of defendant's named insured in any manner whatsoever or at all.

The question of coverage is governed by the provisions of

the Vehicle Code in effect at the time of the accident.[1] Section 415 of the Vehicle Code as then in effect provided that any "owner's policy of liability insurance" as referred to therein "Shall insure the person named therein and any other person, as insured, using any such motor vehicle or motor vehicles with the express or implied permission of said assured, . . ." (Stats. 1957, ch. 1654, § 1, p. 3034; cf. Stats. 1943, ch. 911, § 12, p. 2767; Stats. 1957, ch. 1653, § 3, p. 3030 (operative July 1, 1959); and Veh. Code, § 16451 as adopted Stats. 1959, ch. 3, p. 1649 and amended Stats. 1965, ch. 2003, § 2, p. 4531; and see *Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 37-40 [307 P.2d 359].) The parties have treated the applicable statute as though it read as recited in *Wildman,* and they have disregarded the 1957 amendment which deleted the phrase "or responsible for the use of" following the word "using." (See *Interinsurance Exchange* v. *Ohio Cas. Ins. Co.* (1962) 58 Cal.2d 142, 150-151, fns. 2 and 4 [23 Cal.Rptr. 592, 373 P.2d 640].) Although some of the cases cited by the parties refer to the omitted language in the statute,[2] or to similar language in policy provisions,[3] it is generally recognized that the determinative factor is use by the party claiming to be an additional insured. In fact the responsibility in most cases stems from the use by the alleged tortfeasor personally or through his agent.

From the cases referred to by the parties, and others to which they lead, the following rules may be distilled. ■ The term "using" encompasses "loading or unloading" even though the latter phrase is not included in the statute (*United States Steel Corp.* v. *Transport Indem. Co.* (1966) 241 Cal.

---

[1]The complaint and answers raised an issue as to the policy provisions and the coverage thereby afforded; the question was not resolved by the final pretrial order and the policy was made a part of the agreed statement of facts. The sole reference to the policy provisions in the appeal is plaintiff's reference to a provision whereby the policy shall furnish such insurance as is necessary to comply with the provisions of the motor vehicle financial responsibility laws of any state which shall be applicable.

[2]*Wildman* v. *Government Employees' Ins. Co.* (1957) 48 Cal.2d 31, 38 [307 P.2d 359] and *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543, 552 [19 Cal.Rptr. 558].

[3]*Entz* v. *Fidelity & Cas. Co. of New York* (1966) 64 Cal.2d 379, 381 [50 Cal.Rptr. 190, 412 P.2d 382]; *General Pump Service, Inc.* v. *Travelers Ins. Co.* (1965) 238 Cal.App.2d 81, 83-84 [47 Cal.Rptr. 533]; *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal. App.2d 229, 232 [40 Cal.Rptr. 165]; *Colby* v. *Liberty Mutual Ins. Co.* (1963) 220 Cal.App.2d 38, 42 [33 Cal.Rptr. 538]; *Industrial Indem. Co.* v. *General Ins. Co.* (1962) 210 Cal.App.2d 352, 356 [26 Cal.Rptr. 568]; *Standard Acc. Ins. Co.* v. *Hartford Acc. & Indem. Co.* (1962) 206 Cal.

App.2d 461, 465-466 [50 Cal.Rptr. 576]; *Campidonica* v. *Transport Indem. Co.* (1963) 217 Cal.App.2d 403, 405-407 [31 Cal.Rptr. 735]), or in the provisions of a policy (*Continental Cas. Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27, 33 [17 Cal. Rptr. 12, 366 P.2d 455]; *General Pump Service, Inc.* v. *Travelers Ins. Co.* (1965) 238 Cal.App.2d 81, 84-87 [47 Cal. Rptr. 533]). ■ Where a policy refers to "loading and unloading" this state follows the "complete operation rule" and " 'unloading' is regarded as embracing all the operations which are required in any specific situation to effect a completed delivery of the article. For practical purposes, this doctrine makes no distinction between 'unloading' and 'delivery.' " (*American Auto. Ins. Co.* v. *American Fid. & Cas. Co.* (1951) 106 Cal.App.2d 630, 634 [235 P.2d 645], quoted and approved in *Entz* v. *Fidelity & Cas. Co. of New York* (1966) 64 Cal.2d 379, 382, see generally pp. 382-384 [50 Cal.Rptr. 190, 412 P.2d 382]; in *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co.* (1964) 229 Cal.App.2d 229, 234-235 [40 Cal.Rptr. 165]; and in *Colby* v. *Liberty Mutual Ins. Co.* (1963) 220 Cal.App.2d 38, 43 [33 Cal.Rptr. 538].)

■ It is established that insofar as the load is placed in the hands of the receiver at a designated reception point the unloading operation, and the use from which another can claim to be an additional insured with respect to that portion of the load so delivered, is completed. (*Entz* v. *Fidelity & Cas. Co. of New York, supra,* 64 Cal.2d 379, 384-387; *San Fernando Valley Crane Service, Inc.* v. *Travelers Ins. Co., supra,* 229 Cal.App.2d 229, 236-237; and cf. *Colby* v. *Liberty Mutual Ins. Co., supra,* 220 Cal.App.2d 38, 43.)

The question here, however, relates to when the unloading or use commences. Both parties rely on *American Auto. Ins. Co.* v. *Transport Indem. Co.* (1962) 200 Cal.App.2d 543 [19 Cal.Rptr. 558]. The insurer points out that in that case the recipient's foreman was held to be responsible for using the truck because he "not only directed where the truck was to unload, but also assigned the employee . . . to participate in the unloading." (200 Cal.App.2d at p. 552.) It urges that the cited case and other precedents[4] wherein the claimant of

App.2d 17, 19 [23 Cal.Rptr. 424]; *Columbia Southern Chemical Corp.* v. *Manufacturers & Wholesalers Indem. Exch.* (1961) 190 Cal.App.2d 194, 198 [11 Cal.Rptr. 762]; *Pleasant Valley etc. Assn.* v. *Cal-Farm Ins. Co.* (1956) 142 Cal.App.2d 126, 129 [298 P.2d 109]; *Liberty Mutual Ins. Co.* v. *Steenberg Constr. Co.* (8th Cir. 1955) 225 F.2d 294, 296 and 297.

[4]*Continental Casualty Co.* v. *Zurich Ins. Co.* (1961) 57 Cal.2d 27 [17 Cal.Rptr. 12, 366 P.2d 455]; *San Fernando Valley Crane Service, Inc.* v.

coverage was more involved, conclusively demonstrate that there must be a connecting factor consisting of direct physical involvement in the operation of the motor vehicle and that the use must be active, direct and at the time of the accident for which coverage is claimed.

The record reflects that in the trial court the controversy centered upon the significance to be attached to the planking, and the party or parties responsible for placing the plank which propelled the claimant into the air when the truck drove over it. There is no question herein but that the accident arose out of the use of the truck (see *City of Santa Monica* v. *Royal Indem. Co.* (1958) 157 Cal.App.2d 50, 55 [320 P.2d 136]) ; nor is there question as to the causal connection between the movement of the truck for the purpose of unloading the cement which it carried and the accident (cf. *Entz* v. *Fidelity & Cas. Co. of New York, supra,* 64 Cal.2d at pp. 386-387). The question is whether plaintiff was using the truck at the time within the meaning of the statute. Plaintiff claims that its action in placing the planking ''to assist the truck in reaching the point where it could be unloaded'' was as much a direction to the driver of the truck and therefore as much a use of the truck as was the direction of the foreman in *American Auto. Ins. Co.* (200 Cal.App.2d at p. 555).

Defendant counters with the finding that the planks were placed to protect the conduits at the request of defendant's assured and the electrical contractor, and were in no sense to provide a fixed path for the insured's truck. It points out that the directions were given in this case not by plaintiff's foreman or employee but by an independent contractor. This argument overlooks the facts that the plaintiff ordered and paid for the cement and that the claimant was merely an independent contractor to finish, not supply and furnish, the cement. ■ It may be inferred that plaintiff as general contractor maintained dominion and control over the premises and the right to direct subcontractors and suppliers in their use of the premises. The claimant in directing the truck was

---

*Travelers Ins. Co.* (1964) 229 Cal.App.2d 229 [40 Cal.Rptr. 165]; *Colby* v. *Liberty Mutual Ins. Co.* (1963) 220 Cal.App.2d 38 [33 Cal.Rptr. 538]; *Industrial Indem. Co.* v. *General Ins. Co.* (1962) 210 Cal.App.2d 352 [26 Cal.Rptr. 568]; *Standard Acc. Ins. Co. v. Hartford Acc. & Indem. Co.* (1962) 206 Cal.App.2d 17 [23 Cal.Rptr. 424]; *Pleasant Valley Assn.* v. *Cal-Farm etc. Ins. Co.* (1956) 142 Cal.App.2d 126 [298 P.2d 109]; *American Auto Ins. Co.* v. *American Fid. & Cas. Co.* (1951) 106 Cal. App.2d 630 [235 P.2d 645].

either a volunteer or acting on behalf of plaintiff to assist the latter in performing its obligation to supply the cement at the scene of the claimant's work. Under the latter circumstance plaintiff would become a user of the truck through the acts of the claimant as its agent in directing its movements. (See *American Auto. Ins. Co.* v. *Transport Indem. Co., supra,* 200 Cal.App.2d 543, 551-556; *Liberty Mutual Ins. Co.* v. *Steenberg Constr. Co.* (8th Cir. 1955) 225 F.2d 294, 295-297; *Pellicano* v. *Royal Indem. Co.* (1962) 35 Misc.2d 259 [229 N.Y.S.2d 654, 655-656]; and *Woodrich Constr. Co.* v. *Indemnity Ins. Co.* (1958) 252 Minn. 86 [89 N.W.2d 412, 418]; but cf. *J. Scheer & Sons Co.* v. *Travelers Indem. Co.* (1962) 35 Misc.2d 262 [229 N.Y.S.2d 248].) If the claimant be considered as a volunteer the fact remains that plaintiff as general contractor was responsible for the premises and for the delivery of the cement. Insofar as the accident may have resulted from its failure to exercise proper supervision over the course of delivery on the premises, it may be said to have been negligent in the use of the truck. (See *American Auto. Ins. Co.* v. *Transport Indem. Co., supra,* 200 Cal.App.2d 543, 551 and *Tri-State Concrete* v. *Nationwide Mutual Ins. Co.* (1958) 5 App. Div.2d 384, 386-387 [172 N.Y.S.2d 123, 126].)

Under the agreed facts in this case the trial court was justified in finding that plaintiff was covered as a person using the truck with the permission of the named assured. The plaintiff had general control and is charged with supervision of the job site. It had undertaken (whether voluntarily or by contract does not appear) to order and pay for the cement, and it may be implied therefrom that it had the duty to direct the truck to that portion of the job site where the claimant was to perform his work. It may further be inferred that the unloading and resultant use came into play at the same time as this duty of direction arose. The fact that plaintiff either delegated or neglected to perform this duty renders it no less a user of the truck while that vehicle was proceeding over the job site to the point where plaintiff was obligated to furnish the cement.

*The right to secure a ruling on the existence of and the priority of other insurance has not been properly maintained in the record*

In its complaint plaintiff alleged: "The obligation of defendant to plaintiff under defendant's policy is primary to any other such rights or protection available to plaintiff." The prayer includes the following: "a declaration that the

obligation of defendant to plaintiff is primary to any other such rights or protection available to plaintiff.''

In its answer the defendant insurer alleged that plaintiff was fully covered and insured by another policy issued by United Pacific Insurance Company. The prayer sought a declaration of noncoverage of plaintiff, and did not refer te the resolution of any question of duplicate coverage.

The matter came on for pretrial conference on August 15, 1963, and thereafter a pretrial conference order was signed on August 21, 1963. Presumably the court had before it the respective pretrial statements of the parties which were filed with the order. Plaintiff's statement made no mention of the priority of the insurance it sought to enforce. Defendant's statement set forth the issue as the nature and extent of the insurance coverage owed to plaintiff by its own alleged insurer and by defendant. The order contained no reference to plaintiff's other insurance, and posed the issue as follows: ''Whether or not [the claimant] was engaged in unloading cement when the accident in question occurred.'' On September 25, 1965, plaintiff filed a notice of motion for modification of pretrial order, supported by the declaration of one of its attorneys. Following hearing an order was signed and filed deleting the foregoing issue and substituting: ''Is plaintiff insured under a policy of defendant, . . . and therefore entitled to reimbursement . . .'' No mention was made of the other insurance.

The agreed statement of facts, as hereinabove noted, set forth the issues as follows: ''(1) Whether the policy of defendant covered the liability of plaintiff for said accident; (2) If it covered said liability, whether defendant was required to defend said action on behalf of plaintiff.'' It contained no reference to the insurance allegedly issued to plaintiff. The right to object to the materiality of the facts set forth was reserved, but there is no mention of the right to present further evidence except on the issue of the reasonableness of the attorneys' fees, costs and expenses incurred by plaintiff. The statement was presented to the court by the attorney for plaintiff at the first hearing on the merits who represented that the only matter then to be decided was the time to be taken for the briefs.

At this point in the proceedings defendant offered in evidence a policy allegedly issued to plaintiff as the named insured. The trial court sustained plaintiff's objection which

was predicated upon the fact that the existence and scope of this policy was not within the issues in either the pretrial order or the agreed statement of facts, and the additional ground that the insurer under that policy was not a party to the action. At the conclusion of the final hearing defendant again raised the issue, and for the record the court confirmed its prior ruling.

The defendant's policy, which was made a part of the agreed statement of facts provides: "Other Insurance. If there is other insurance against an occurrence covered by this policy, this insurance shall be deemed excess insurance over and above the applicable limits of all such other insurance." The defendant, however, failed to make any record of the contents of the policy allegedly issued to plaintiff.

On this state of the record it is impossible to review the propriety of the pretrial order which failed to include the issue raised by the other insurance. In the absence of a request for modification by the defendant, it was bound by the pretrial order. (Cal. Rules of Court, rule 216; cf. rules 215, subd. (b) and 218; and see *Cal-Neva Lodge, Inc.* v. *Marx* (1960) 178 Cal.App.2d 186, 187 [2 Cal.Rptr. 889] and *Baird* v. *Hodson* (1958) 161 Cal.App.2d 687, 690 [327 P.2d 215].) Defendant failed to preserve the issue of other insurance, or even the right to raise it, in the agreed statement of facts. Its agreement to the issues set forth in that statement precludes attack on the failure to set forth other issues, in the pretrial order, even if such attack could be made in the absence of a request for correction or modification under paragraph (b) of rule 215. (See *Duffy* v. *Griffith Co.* (1962) 206 Cal.App.2d 780, 787-789 [24 Cal.Rptr. 161].)

For the same reasons the trial court properly excluded the offer into evidence of the other insurance policy. The pretrial order and the issues as framed by the agreed statement forestalled its admission. It is unnecessary on this record to determine whether an insurer who is sued by a potential insured must bring in the latter's insurer in order to raise the question of the relative priorities; or whether it may proceed to establish that any coverage it furnishes is excess over other insurance available to the plaintiff without so joining the other insurer.

In any event, the failure of defendant to preserve the contents of plaintiff's policy in the record precludes consideration of whether or not it covered the loss in question, and, if so, its priority with defendant's insurance.

*The court erred in overruling defendant's objections
to the proof adduced in support of the reasonableness
of the amounts expended by plaintiff for
defense of the claim*

The agreed statement of facts referred to plaintiff's claim of $8,571.25 for attorney's fees and court costs, and $2,920.57 for costs of investigation. At the trial defendant agreed that those amounts had been paid out and that the issue was reasonableness. Defendant objected when the attorney for plaintiff commenced to testify in regard to a bill for $3,626.65 paid to the law firm which conducted the first trial, on the ground among others that the witness, who first came into the case thereafter, was not competent to testify as to the actual work performed by the prior firm. The court on a second offer overruled the objection and admitted the bill. No testimony was received as to the services actually performed or in respect to the reasonable value of the services itemized in the bill.

Although a bill may evidence the rendition of the services set forth thereon (see *R. H. Macy & Co.* v. *Robinson* (1960) 183 Cal.App.2d 182, 191-192 [6 Cal.Rptr. 703]), in order to be competent evidence under section 1953f of the Code of Civil Procedure, it must be supported by the testimony of a witness qualified to testify as to its identity and the mode of its preparation. The recipient may vouch for the former, but cannot supply the latter.

Plaintiff seeks to avoid the shortcomings of its proof by reference to the principle that the amount paid is some evidence of the reasonable value of the services or goods for which it is paid. (*Dewhirst* v. *Leopold* (1924) 194 Cal. 424, 433 [229 P. 30]; *Francis* v. *Sauve* (1963) 222 Cal.App.2d 102, 124 [34 Cal.Rptr. 754]; *Meier* v. *Paul X Smith Corp.* (1962) 205 Cal.App.2d 207, 222-223 [22 Cal.Rptr. 758]; *Laubscher* v. *Blake* (1935) 7 Cal.App.2d 376, 383 [46 P.2d 836].) Support for the judgment is also sought in the following: "The value of attorney's services is a matter with which a judge must necessarily be familiar. When the court is informed of the extent and nature of such services, its own experience furnishes it with every element necessary to fix their value." (*Spencer* v. *Collins* (1909) 156 Cal. 298, 307 [104 P. 320, 20 Ann.Cas. 49]; accord: *Russell* v. *United Pacific Ins. Co.* (1963) 214 Cal.App.2d 78, 88-89 [29 Cal.Rptr. 346]; *Bunn* v. *Lucas, Pino & Lucas* (1959) 172 Cal.App.2d 450, 468 [342 P.2d 508].)

In each of both the former and the latter group of cases the court had before it some evidence of the nature and extent of the services rendered. Plaintiff refers to the itemization in the bill for such proof, but, as has been noted, the bill was not properly authenticated. Some support for the judgment may be found in the agreed statement which empowered the trial court to consider all the records and files and depositions in the personal injury action in determining the instant action.

It appears, however, that the trial judge gave judgment for the exact amount claimed, which ostensibly was predicated on the bills paid.[5] Reference to the bill reflects several items of service which are attributable to the question of coverage raised by this action and not to the defense of the principal suit. To allow recovery for these items would be to grant plaintiff an unwarranted recovery of attorneys' fees for the pursuit of the matters resolved in this action. The defendant was prejudiced by plaintiff's failure to produce authentication of the services rendered by plaintiff's original attorneys.

The judgment is reversed on the issue of damages and the case is remanded to the trial court with instructions to take such additional evidence as it may be advised, to revise its findings of fact and conclusions of law in regard to the damages, and to pronounce judgment accordingly.

Sullivan, P. J., and Molinari, J., concurred.

---

[5] According to the agreed statement plaintiff claimed attorneys' fees and court costs of $8,571.25 and costs of investigation of $2,920.57, or a total of $11,491.82, as allowed in the judgment. A discrepancy appears in addition to the contested bill. If all of the testimony and exhibits are considered, they reflect legal fees of $8,525 and court costs and other costs of $2,676.92 or a total of $11,201.92. Defendant's stipulation only went so far as to agree that the bills had been paid, and there is no support for a judgment in excess of the latter figure.